### Edward C. Jones Company *v.* Perry et al.

[No. 2,983.    Filed May 29, 1900.    Rehearing denied April 24, 1901.]

Municipal Corporations.—*Street Improvements.—Barrett Law.— Waiver.—Personal Liability.*— One whose property is assessed for street improvements made under the Barrett law, §§4288-4298 Burns 1894, who executes a waiver and agreement authorized by §4294 Burns 1894, in consideration of being permitted to pay his assessment in instalments, becomes personally liable for the amount of the assessment because of such waiver and agreement.

From the Madison Circuit Court.    *Reversed.*

*C. K. Bagot, A. Ellison, T. Bagot* and *W. F. Edwards,* for appellant.

*J. L. Crouse, A. H. Jones, J. F. Elliott, W. C. Overton, Dan Waugh, L. J. Kirkpatrick* and *J. F. Morrison,* for appellees.

HENLEY, J.—The common council of the city of Alexandria, in the year 1893, by proceedings in every way proper so far as the record in this cause shows, improved the portion of Harrison street extending north from Madison street to Taylor street in said city. The proceedings were had and improvement made under §§4288-4298 Burns 1894, being what is commonly known as the Barrett law. The total cost of this improvement was $22,077.48, which amount was duly apportioned and assessed against the real estate abutting on the improvement according to the frontage of the several lots along the same. The appellee in this cause was and still is the owner of certain real estate which was assessed for its portion of the cost of the improvement, the amount of the assessment against appellees' property being $722.19. The amount of this assessment became a lien against appellees' real estate, said real estate being alone liable for the same, and no personal judgment could have been rendered against appellee for the amount of said assessment, unless by some act of appellee himself he became personally liable for the amount. When the improvement was completed, appellee, by the terms of the statute, could have paid his assessment and satisfied the lien existing upon his real estate, or he could have permitted his real estate to be sold to discharge said lien, or he had the privilege, under the statute, of executing a waiver and agreement to pay the said assessment in ten annual instalments with interest. Appellee took the latter course and executed the waiver and agreement permitted by the statute under which the work was done. The record shows that other persons affected by this improvement, together with the appellee, executed the waiver and agreement contemplated by the statute, and that the total amount of the assessment against the property of the persons so executing the waiver and agreement amounted to $16,370, and that street improvement bonds to said amount were issued by the city of Alexandria and turned over to the contractors in part pay-

ment for said improvement. These bonds were sold and transferred by the contractors to the appellant, and this action was commenced by appellant against the appellee to enforce the collection of certain instalments on appellee's assessment which were due and unpaid. By appellant's complaint it is sought not only to enforce the lien of said assessments against appellee's said real estate, but also to procure a personal judgment for said amount against appellee. This personal judgment is sought under the terms of the waiver and agreement executed by appellee, and in order to protect appellant against loss in case appellee's real estate should fail to sell for a sum sufficient to pay said assessment. Upon the trial of the cause, the court made a special finding of facts and stated its conclusions of law thereon. To the conclusions of law, appellant excepted. The only error assigned in this court is that the lower court erred in its second conclusion of law stated on the special finding of facts. The second conclusion of law to which objection is made by appellant is "that plaintiff is not entitled to personal judgment against the defendant Solomon Perry."

The pleadings have been in no way attacked, and it is conceded that the record presents the question argued by counsel. By the special finding of facts the court found all the facts necessary to establish the lien of the assessment upon appellee's real estate. The court also made the following finding numbered eighteen in its special finding of facts, viz.: "That within two weeks from the date of approval of said final estimate and report property owners along the said part of said street so improved and owning real estate abutting thereon, filed with the clerk of said city their contract and agreement in writing in the words and figures following, to wit: The undersigned, having been respectively assessed in excess of $50 for the construction of North Harrison street between Madison and Taylor streets, in the city of Alexandria, in the county of Madison, State of Indi-

ana, hereby severally promise and agree, in consideration of
having the right to pay their respective assessments for said
improvement in instalments, that they will not make any ob-
jection to their respective assessments as to the illegality or
irregularity of the same, but will respectively pay the said
instalments with interest thereon at such rate, not exceeding
six per cent. as shall by ordinance or resolution of the com-
mon council of said city be prescribed and required. Dated
October 30, 1893." Signed to this agreement and waiver,
along with others, appears the name of appellee. The above
agreement was such an agreement as the act under consider-
ation authorizes the assessed property owner to execute.
That part of the act authorizing the execution of the waiver
and agreement is as follows: "Should any one of such
assessments exceed the sum of $50, then if the owner of the
lot or parcel against which said assessment is made, may,
if he, within two weeks after the making of such assess-
ments, shall promise and agree, in writing, to be filed with
the clerk of such city or town, and to be spread of record
by him in consideration of the right to pay his or their as-
sessment, or respective assessments in instalments, that they
will not make any objections to illegality or irregularity as
to their respective assessments, and will pay the same, with
interest thereon, at the rate of not exceeding six *per centum*
per annum, as shall by ordinance or resolution of the com-
mon council of such city, or board of trustees of such town,
be prescribed and required, he or they shall have the benefit
of paying said assessments in ten annual instalments, as
hereinafter provided." §4294 Burns 1894.

As to the agreement executed under this statute we
find no room for construction other than the plain and
common meaning to be given to the words employed. The
consideration for the agreement is expressly stated in the
language of the statute to be in consideration of the right
to pay his or their assessments in instalments. For such
consideration the assessed property owner agrees (1) that

he will not make any objection to the illegality or irregularity of his assessment; (2) that he will pay such assessment in instalments with interest thereon at a rate not exceeding six *per centum* per annum.

This court held in the case of *Richcreek* v. *Moorman,* 14 Ind. App. 370, that the assessed property owner could not, after signing the agreement contemplated by §4294, *supra,* be heard to question the irregularity or illegality of his assessment.   If that part of the statute which permits the property owner to waive an illegal or irregular act is to be enforced, is it right that his plain, unequivocal agreement to pay, founded upon a valid consideration therein expressed, should be held of no effect ?   We think not.   Every element of a debt is present.   The obligation arises out of an express contract.   It entitles the creditor to receive from the promisor unconditionally a certain sum of money, the amount of which is fixed, and which the promisor is under a legal duty to pay without regard to any future contingency.   *State, ex rel.,* v. *Hawes,* 112 Ind. 323; *Mayor, etc.,* v. *Gill,* 31 Md. 375.

The statute under consideration does not, nor does it attempt to, create a personal liability upon the part of the property owner whose property may be assessed under its provisions.   It simply provides a way by which the assessment may be paid in instalments.   It provides a way by which the property owner, at his own option, can agree to pay.   He becomes personally liable, not by force of the statute, but by his own agreement made after the debt is created, and for a valuable consideration——the extension of the time of payment.   It is the history of the growth of cities and towns that the real estate therein at times rapidly increases in value and at other times as rapidly decreases in value. The lots and parcels of land abutting upon a street may be worth many times the amount of the assessments levied upon them at the time the improvement is made and the assessment falls due, and in a short time thereafter may be

worth less than the assessment; but the cost of the improvement is fixed; the contractor has already expended his money.  If permitted to foreclose his statutory lien at the time the assessment falls due, he would obtain his money; but the owner of the property, by an agreement which the statute simply permits, defers the time of payment for ten years.  In order to do this he agrees to pay the debt.  We can not hold that after so contracting, he can, if his property decreases in value to a point where it is not worth as much as the debt, throw the assessed real estate with the resulting loss upon the holder of the debt and thus escape the consequences of his own act.  We are satisfied that the legislature did not so intend.

In the case of *Quill* v. *City of Indianapolis*, 124 Ind. 292, 7 L. R. A. 681, cited by appellees' counsel, the question here under consideration was not before the court.  The position occupied by appellee is very similar to that of the purchaser of mortgaged real estate who buys subject to the mortgage; he does not incur a personal liability to the holder of the mortgage; but when the debt secured by the mortgage falls due, he could by contract agree to pay the debt if divided into ten equal annual instalments.  No one would contend that such an agreement did not create a personal liability.  In the case at bar, we have an agreement duly executed; such an agreement as the statute expressly permits; a valid consideration expressed therein.  We would do violence to the plain meaning of the words employed to hold other than that appellee became personally liable for the amount of the assessment against his real estate by the execution of the waiver and agreement herein set out.  The lower court erred in its second conclusion of law stated upon the facts found.

The judgment is reversed, with instructions to the lower court to restate its conclusions of law and render judgment accordingly.

Jones Co. *v.* Perry.

### DISSENTING OPINION.

WILEY, J.—I am unable to concur in the conclusion reached by the majority of my associates in the prevailing opinion, and I am so firmly convinced that the reasoning which leads to the conclusion is fallacious and the conclusion itself is erroneous, that I can not forbear in expressing the views which I entertain, and which views, it seems to me, are in harmony with sound reason and in line with the weight of authorities upon the subject involved.

The right of a municipality to lay a burden upon private property for a public improvement is a recognized right, but that right, as I shall later show, rests upon the theory that such property thereby derives a benefit equal to the burden imposed. This is the whole superstructure upon which the right rests, and except where the power has been conferred upon the municipality by express enactment of the law-making power of the State, no attempt has ever been made to create a personal liability against the owner, and in most of the states of the Union, where the question has been raised, it has been held that even such legislative enactment can not create a personal liability. This proposition will be elaborated in a subsequent part of this opinion.

As stated in the prevailing opinion, the court below made a special finding of facts and stated conclusions of law thereon. The first conclusion of law was to the effect that appellant was entitled to have its lien foreclosed and the property sold to pay and satisfy the amount of principal and interest and attorney's fees found to be due. The second conclusion of law was "that the plaintiff is not entitled to a personal judgment against the defendants", etc.

Considering the importance of the question here involved, I may be pardoned for a full expression of my views, even though in doing so I may embrace in the opinion parts of the record which appear in the prevailing opinion. §4294 Burns 1894 makes provisions for the payment of street assessments, at the election of the property owners, in ten

equal instalments. The right so to pay is by statute made conditional, and before being granted such right they are required to do certain things. In two weeks after the assessment is made, they must agree in writing, which writing must be filed with the clerk, that (1) they will not make any objections to the "illegality or irregularity" as to the assessment made against their property; (2) that they will pay the same with interest thereon. These are two things they must agree to, and, having done this, the time for payment is extended, etc. The consideration for this waiver, as expressed in the statute, is that the property owners will not object to the "illegality or irregularity" of their respective assessments, and will pay the same with interest. As to what is meant by the promise to pay will be considered further on. When the improvement in question was made, appellee, with others, took the benefit of the instalment plan payment, and executed and filed with the clerk the following waiver: "The undersigned having been respectively assessed in excess of $50 for the construction of North Harrison street between Madison and Taylor streets, in the city of Alexandria * * * hereby severally promise and agree, in consideration of having the right to pay their respective assessments for said improvement in instalments, that they will not make any objection to their respective assessments or to the illegality or irregularity of the same, but will respectively pay the said instalments with interest thereon, etc."

The proposition for which appellant contends is made manifest by the following quotation from the brief of counsel: "The appellant seeks in this action not only to enforce the lien of said assessment, with accrued interest, costs, and attorney's fees against the appellee's real estate, but also to procure personal judgment for said amount against the appellee under the terms of said waiver and agreement, so executed by him, in order to protect itself

against the possibility of loss, in case the appellee's said real estate should fail to sell for a sum sufficient to pay said claim and charges." In plain or more direct words, it is the theory of appellant that by the waiver above set out 'of the appellee he became personally liable for the payment of the amount assessed against his real estate. In this connection, I might remark that appellant in its complaint refers to this waiver, and filed a copy of it with the complaint as an exhibit, yet the complaint is not based upon the waiver, but upon the bonds, and the waiver is not the foundation of the action.

It is argued that the waiver above set out constituted a valid and binding agreement on the part of appellee to pay the amount of the assessments against his property, and that by such agreement he became personally liable for the amount assessed. The prevailing opinion holds that this waiver did constitute a valid and binding agreement, and created a personal liability against appellee. This is the first time that this question has been directly presented to the courts of this State in its present form, but I think the principle involved has been fully settled. That part of the statute for our construction is as follows: "Should any one of such assessments exceed the sum of $50, then if the owner of the lot or parcel against which said assessment is made, may, if he, within two weeks after the making of such assessments, shall promise and agree, in writing, to be filed with the clerk of such city or town, and to be spread of record by him, in consideration of the right to pay his or their assessment, or respective assessments in instalments, that they will not make any objections to illegality or irregularity as to their respective assessments, and will pay the same, with interest thereon, * * * he or they shall have the benefit of paying said assessments in ten annual instalments," etc. This provision of the statute should be considered and construed in connection with the whole statute relative to the subject-matter of which it is a part, for

the rule prevails that, for the purpose of arriving at the legislative intent in the enactment of a statute, courts will look to the whole statute and all of its parts. *Parvin* v. *Wimberg,* 130 Ind. 561, 15 L. R. A. 775, 30 Am. St. 254; *Cleveland, etc., R. Co.* v. *Backus,* 133 Ind. 513; *State Board, etc.,* v. *Holliday,* 150 Ind. 216. When so construed, I can not believe that it was the intention of the legislature, by enacting that part of the statute quoted, to create a personal liability against the property owner upon an assessment against his property for a street improvement, or to make it optional with him to create such liability. A statute providing for an assessment against real estate for a public improvement rests upon the theory that by the improvement the property is benefited to the extent of the assessment, and that the owner has received peculiar benefits which the citizens do not share in common. *Quill* v. *City of Indianapolis,* 124 Ind. 292, 7 L. R. A. 681; *Heick* v. *Voight,* 110 Ind. 279; *Ross* v. *Stackhouse,* 114 Ind. 200. Following that part of the statute under consideration is a provision that any owner of a lot who has been assessed, "who will not promise and agree in writing as herein provided, * * * shall be required to pay his or their assessment in full when made." It is also provided that the contractor or his assigns may foreclose his assessments as a mortgage is foreclosed, and that he shall recover in addition to the assessment, with interest, all costs and attorney's fees.

The waiver to which we have referred was evidently enacted for the benefit of the property owner, to the end that the payment of the assessment against his property should be lightened as much as possible by extending the time of payment ten years, etc. This, in many instances, would greatly lighten the burden of the assessment. To this end, the board of trustees or the common council of the town or city are authorized to issue improvement bonds by which a fund may be created with which to pay the contractor. The bonds thus issued are required to bear the

names of the streets improved, if the assessment is for street improvements, and "such certificates and bonds shall transfer to the contractor and his assigns all the right and interest of such city or town to, in and with respect to every such assessment and the lien thereby created against the property of such owners assessed as shall avail themselves of the provisions of this act to have their assessments paid in instalments, and shall authorize such contractor and his assigns to receive, sue for and collect, or have collected, every such assessment embraced in any such certificate or bond, by or through any of the methods provided by law for the collection of assessments for local improvements, including the provisions of this act." §4297 Burns 1894.

Provision is made in the same section whereby the owner of bonds may proceed "to collect such assessment and foreclose the lien thereof    *    *    *    and shall recover, in addition to the amount of such bonds or certificates and the interest thereon, a reasonable attorney's fee, together with the cost of such suit."

Section 4296 Burns 1894 provides that "such bonds when issued, shall transfer to the owner thereof all the right and interest of such city or incorporated town in and to such assessments and the liens thereby created, with full power to enforce the collection thereof by foreclosure or otherwise, under any of the provisions of this act." It is significant to note in this connection what this statute transfers to the owner of the bonds. The bonds are issued by the town or city, and are primarily their property. They may be transferred to any person. There is no provision of the statute requiring the contractor to take the bonds in payment for his work, though this is often done. The town or city may sell them to any one, for the primary and sole object in issuing them is to raise money with which to pay for the improvement. §4296, *supra.* To the owner of the bonds the statute transfers all the right and interest of the town or city in and to such assessments and liens thereby created. §4296, *supra.*

It seems to me that by this statute the legislature studiously avoided making any provision for transferring to the owner of the bonds any personal liability, which, in my judgment, the prevailing opinion erroneously holds was created by the waiver provided for in §4294 Burns 1894. The only thing contemplated by the statute which the town or city could transfer is their right and interest in and to the "assessments and liens created thereby." This section of the statute follows the one providing for the waiver and agreement to pay, and it is obvious, therefore, that the legislature did not have in mind that it had created a personal liability against the property owner, or it would have made provision for transferring such liability to the bondholder. It follows from this that if there is any personal liability, which, I affirm, does not exist, that liability is in favor of the town or city, for the agreement, if indeed it may be dignified by that comprehensive term, is made with the city or town, and the statute makes no provision for its parting with that right.

I have referred to the fact that street improvement bonds go into the commercial markets and are sold. They are purchased by speculators as an investment. Will any one for a moment contend that such bonds go upon the commercial markets and marts of speculation, on the faith of the waiver of the property owner, that he will not question the legality or regularity of the assessment, and that he will pay his assessment in ten equal instalments? Certainly not. Their market value is measured by the assessments and the lien created thereby, and the credit of the property out of which alone they can be collected. In many instances, doubtless, the property owner is wholly insolvent. If the waiver creates a personal liability, then the owner of the bonds may waive his right to foreclose the lien of the assessment, the only right he is given by statute by the transfer, and sue directly upon the agreement to pay. He need not resort to the enforcement of his lien in the first instance. If this can be done, the future, to property owners in towns

and cities, is fraught with untold hardships and paved with enormous evils, under the rule established by the prevailing opinion in this case.   It will establish class litigation, in that the rich will be annoyed by actions for personal liability, while the owner of the bonds will pursue the only remedy contemplated by statute, and foreclose the lien of the assessment against the property of the poor.   Neither can it be said that the contractor performs the work and furnishes the material for the improvement upon the faith of the statutory waiver of the property owner, for the evident reason that the work is completed before assessment is made and before it is known whether the property owner will avail himself of the right to pay in instalments.

Another provision of the statute is worthy of notice, and goes far in aiding in determining the intention of the legislature on the question of a personal liability of the property owner.   As we have seen, the statute only authorizes the issuing of bonds for the purpose of creating a fund out of which to pay for the improvement.   The lien created by statute is primarily in favor of the city, and is so declared by the express language of the statute.   §4288 Burns 1894. The statute charges the town or city primarily with the duty of collecting assessments as they become due.   The right and interest of the town in and to the assessments and the lien created thereby can only be transferred to the owner of the bonds.   While it is the duty of the muncipality to collect the assessments as they become due, and they are made collectible as other taxes, etc., the legislature wisely provided a remedy for the bondholder in default of the municipality to perform the duty imposed upon it by statute.   And it was provided that "if such city or incorporated town shall fail, neglect or refuse to promptly enforce and collect such assessments when due, the owner or holder of the bonds   *   *   *   may foreclose such lien or liens as a mortgage is foreclosed", etc.   The statute further provides that "the amount realized by the sale of any of such prop-

erty, or the payment of such assessment, * * * shall * * * be applied *pro rata* to the payment of the then outstanding bonds", etc. If it had been the intention of the legislature to create a personal liability against the property owner, or make it possible for him to create one against himself, it would have undoubtedly provided a remedy by which such liability could be enforced.

The statute under consideration is in derogation of the common law and must be strictly construed. It should be observed that every provision of the statute looking to the collection of the assessments relates to who may and the manner of foreclosing and enforcing the lien. No mention is made of a personal liability, and no provision is found in the statute for enforcing one. The construction given to the statute by the majority of my associates can only be sustained by reading into the statute something that the legislature did not put there, and which it seems evident from the whole statute that it did not intend should be there. So looking at these several provisions of the statute and considering them together, as we must, it seems clear that the only remedy given to the bondholder by the legislature is to enforce his lien given him by the statute.

In *Quill* v. *City of Indianapolis,* 124 Ind. 292, Mitchell, C. J., in discussing the provision in regard to the waiver said: "It is apparent from the connection in which it occurs, that the above provision only applies to those persons who, in consideration of their right to pay their assessments in semi-annual instalments, agree in a writing, * * * that they will not make any objection to the legality or regularity of their respective assessments. Such an agreement is required by §821 [4294, *supra*], as the condition upon which the property owner may secure the benefit of the instalment scheme for which the act provides. When the work is completed the property owner has his election to refuse to sign the agreement provided for, and stand upon his common law rights in respect to contesting the validity of the assess-

Jones Co. *v.* Perry.

ments made against him, in which case the assessment becomes due when made, or he may waive any irregularities, and secure the benefit of ten years' time by signing an agreement to that effect." Again in the same case it was said: "It is enough to say the remedy of the holders of the bonds or certificates is confined exclusively to the special fund provided for and to the collection of assessments by enforcing the lien upon the lots or parcels of ground assessed with the costs of the improvement.   *   *   *   If the assessments become delinquent the remedy of the holders of the bonds or certificates is confined to the property." By the waiver, as provided by statute, it seems clear that just three things were contemplated: (1) That the property owner might have ample time in which to pay the assessment against his property. (2) That he should be precluded from questioning the legality or regularity of the proceedings and assessments in consideration of that right. (3) That he should be precluded from bringing any action to restrain or enjoin the collection of the assessment. Indiana Statutory Liens, §1234; *Richcreek* v. *Moorman,* 14 Ind. App. 370.

Our attention has been called in argument to the line of cases holding that in an action to enforce a lien against the right of way, etc., of a railway company, for an assessment for a public improvement, the courts may, in addition to a decree foreclosing a lien, render a personal judgment against the company. Counsel for appellant argue that the principle they here contend for is fully supported by those cases. I do not think so. While it is true it has been held that a personal judgment may be rendered against a railway company for an assessment for a public improvement, yet it is upon the theory that it would be against public policy to decree the sale of the specific property to which the lien attached, and hence if there could be no personal judgment railway companies might escape a just proportion of the burden arising from the system of public improvement.

The rule is well stated by Reinhard, J., in *Lake Erie, etc.. R. Co.* v. *Walters,* 9 Ind. App. 684, as follows: "The only reason why a personal judgment may become a proper and available remedy in certain cases of this character, where the proceeding is against a railroad company to enforce a lien upon its railroad property and franchises, is that it would be contrary to public policy to decree the sale of the specific property to which the lien has attached, and as the lienor might otherwise be left without any remedy whatever, equity will, in a proper case, award such lienor the right of collecting the amount due him by virtue of the lien, in the way of such personal judgment." See, also, *Lake Erie, etc., R. Co.* v. *Bowker,* 9 Ind. App. 428.

It is apparent that the rule announced in the cases cited can have no application here, because in this class of cases the reason for the rule fails, and where the reason for the rule fails, the rule itself must also fail. Counsel for appellant have also called attention to some cases in other states, where judgments over against property owners for street and other improvements have been upheld. I have examined all the cases cited, and extended my investigation further, and find that in all such cases where such judgments have been rendered and upheld they have been authorized by express provisions of statute. In other words, the statutes created a personal liability against the property owner. But in some of the states statutes authorizing a personal judgment against the property owners for a street improvement have been held unconstitutional. Thus in *Taylor* v. *Palmer,* 31 Cal. 240, it was held that that part of the consolidation act of San Francisco, which makes the owner of a lot bordering on an improved street liable for that part of his assessment for the improvement of the street which may remain unpaid after a lien has been enforced against the lot, was unconstitutional. In *Craw* v. *Village of Tolono,* 96 Ill. 255, a similar act was held unconstitutional. To the same effect are the following cases: *Manning* v. *Den,* 90 Cal. 610,

27 Pac. 435; *City of Raleigh* v. *Peace,* 110 N. C. 32, 14 S. E. 521; *Higgins* v. *Ausmuss,* 77 Mo. 351; *Neenan* v. *Smith,* 50 Mo. 525; *Town of Macon* v. *Patly,* 57 Miss. 378; *City of Virginia* v. *Hall,* 96 Ill. 278; *Gaffney* v. *Gough,* 36 Cal. 104; *City of Seattle* v. *Yesler,* 1 Wash. Ter. 571; *City of Burlington* v. *Quick,* 47 Iowa 222; *Green* v. *Ward,* 82 Va. 324.

Mr. Beach on Public Corporations, §1189, lays down the rule that "It is quite clear that unless the landowner be made personally liable by statute for the amount of the assessment it can be collected only out of the property assessed." Referring to the cases where personal judgments have been authorized by statutes and upheld by the court, the same author in the same section says: "It is contended, however, by eminent text-writers that this doctrine is opposed to the very definition of a local assessment, which is a burden imposed upon property exactly (as near as may be) commensurate with the benefit conferred, and that other property can not be seized without violating the constitutional provision which forbids the taking of property without compensation." Judge Elliott in his work on Roads and Streets declares the rule to be that in the absence of legislative authority the property assessed is alone liable to seizure for the amount assessed, and that the contractor can not look to other property. He says: "It is not easy to perceive how the assessment can extend beyond the property against which it is directed, since the sole foundation of the right to direct and enforce the assessment rests upon the theory that the land receives a benefit equal to the assessment. If the land with a superadded value given it by the improvement, will not pay the assessment, there is no constitutional warrant to seek payment of the assessment elsewhere, for the land is all that the improvement can by any possibility benefit," etc. See, also, Cooley on Taxation (2nd ed.) 674.

In the prevailing opinion I find this language: "Under this statute we find no room for construction other than the

plain and common meaning to be given to the words employed." This language has reference to that part of the statute providing for the signing of the waiver by the property owner, for it immediately follows that part of the statute which is copied into the opinion, and no other section of the statute is referred to. It is thus apparent that the majority of my associates have determined the rights of the parties hereto and fixed a personal liability upon the appellee by a construction placed upon a detached part of a general statute containing many provisions, and without reference to the universal rule of construction, that the statute and all of its parts must be construed together. (See authorities cited above.) If this were the only provision of the statute covering the subject-matter of the question here involved, the construction put upon it by the majority of the court would, in my judgment, be a strained construction, in view of the fact that it is abhorrent to and so out of line with the fundamental principles upon which the right of the municipality to create such a lien is based. When these principles and that provision of the statute whereby the right and interest of the town or city in and to the assessments and the liens created thereby are transferred to the owner of the bonds, and other portions of the statute to which I have referred are considered together, it seems to me that there is no warrant in reason, or upon any reasonable legal rule of construction, to give to the statute the meaning or construction stated.

In the prevailing opinion, it is said: "If that part of the statute which permits the property owner to waive an illegal or irregular act is to be enforced," (that is, after he has signed the waiver he will not be permitted to question the legality of the proceedings), "is it right that his plain, unequivocal agreement to pay, founded upon a valid consideration therein expressed, should be held of no effect? We think not. Every element of a debt is present. The obligation arises out of an express contract." This reasoning

is illogical and rests upon a false theory. The considera-
tion expressed in the statute for the extension of the time of
payment is twofold; (1) that the property owner will not
make any objections to the "illegality or irregularity" of the
assessment against his property, and (2) that he will pay
the same with interest, etc. The prevailing opinion recog-
nizes and so states, that a part of the consideration so ex-
pressed is illegal, yet the property holder may not take ad-
vantage of the fact after he has agreed to waive it. So we
have a consideration for an agreement, part of which is
illegal, and a part of which is valid. Is there any way in
this case and under the statute in question by which the
illegal and valid considerations are susceptible of division?
Certainly not. In such case the whole consideration fails
and the agreement fails. See *Pierce* v. *Pierce,* 17 Ind.
App. 107, and authorities there cited. Nor can I agree
with the statement that the obligation arises out of an ex-
press contract. The waiver provided by statute does not
possess an element of a contract.

The essential elements of a contract are the existence
of two or more contracting parties. There must be a meet-
ing of their minds, by which each gives his voluntary assent
to the thing or things agreed upon, which constitutes the
subject-matter of the undertaking. There must be more
than one party to a contract, for no one can make a binding
contract with himself. 7 Am. & Eng. Ency. of Law (2nd
ed.), 98, 99, and authorities there cited. In this case there
was no one with whom the appellee could contract, and he
did not contract with any one. Concede, however, for the
argument, that he did contract with the municipality. The
contract, if there was one, was in writing, and the right to
enforce it was in the city, and so far as the record in this
case shows the city has not parted with that right, by assign-
ment or transfer, or in any manner known to and recognized
by the law. The statute makes no provision for assigning or
transferring the contract to any one. The statute provides

that when street improvement bonds are issued they shall transfer to the "owner thereof all the right and interest of such city or incorporated town in and to such assessments and the liens thereby created." This is all the municipality is authorized to transfer. The statute does not in any sense authorize the owner or holder of the bonds to proceed to collect them by a suit at law and obtain a personal judgment, but only confers upon such owner "full power to enforce the collection thereof by foreclosure."

In the prevailing opinion, it is said: "He [the property owner] becomes personally liable, not by force of the statute, but by his own agreement made after the debt is created, and for a valuable consideration—the extension of the time of payment." The fallacy of this statement is apparent for the reason that it is based upon the theory that an assessment against real estate for a street improvement creates a debt against the owner. It is not now and never has been the rule that such assessments create a debt against the owner of the property. It does not possess the elements of a debt. An assessment thus made creates a lien against the property, but nothing more, and so it has always been held. So it is plain that the property owner could not agree to pay a debt that did not exist, for there would be nothing to pay and no consideration for the agreement. Attention is called in the prevailing opinion to the varying values in real estate in cities and incorporated towns, and it is suggested that if a bondholder is permitted to foreclose his statutory lien when the assessment falls due, he would obtain the money, while, if the property owner avails himself of the right to pay in instalments, his property may decrease in value and the owner of the bonds be unable to secure his money by foreclosure. I am unable to see any force in this argument. It is a complete answer to it to say (1) that the improvement is not made on the faith of the waiver and agreement to pay in instalments, and (2) that it oftener occurs that the property increases instead of de-

creases in value. The very improvement itself is an added value to the property, and the right to assess the property for the improvement rests upon that fact.

Recurring again to the case of *Quill* v. *City of Indianapolis,* 124 Ind. 292, it is important to note the force of the language used and the questions there decided. In that case it was sought to hold the city liable for the bonds issued by it for a street improvement, and it was held that it was not liable. The decision rested upon the doctrine that the city, in issuing the bonds, did not thereby create a debt against it. It was held that it is essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holders thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay without regard to any future contingency. While the exact question here involved was not present in that case, the principle here under consideration was fairly settled, adversely to the conclusion reached by the majority of my associates. Mitchell, C. J., speaking for the court, said: "The remedy of the holders of the bonds or certificates is confined exclusively to the special fund provided for and to the collection of assessments by enforcing the lien upon the lots or parcels of ground assessed with the cost of the improvement." In that case, property owners took advantage of the provision of the statute to pay their assessments in instalments. What did the learned judge mean by saying that the holders of the bonds or certificates were "confined exclusively", etc? It can have but one meaning, and that is that the bondholder has but one remedy, i. e., to look to the special fund provided for by statute, or foreclose his lien. This is made plainer by what follows, where it is held that the bonds go out with the absolute credit of the property upon which they are made a lien.

To my mind, it is clear that the legislature, from the whole scope of the act under consideration, did not contem-

plate that a property owner, in signing the waiver provided, whereby he was to have the right of paying his assessment in instalments, would create against himself a personal liability. As I have above demonstrated, the statute does not make any provision for the holder of the bonds to sue the property owner *in personam*, and if it was the intention of the legislature that so radical a departure should be injected into the act, it would have expressed it in unmistakable language.

My conclusion, therefore, is that appellee Perry did not create any personal liability against himself by signing the waiver and agreement set out in the complaint, and hence I hold the second conclusion of law was correct, and the judgment should be affirmed.

Black, J., concurs in the conclusion expressed in the dissenting opinion of Wiley, J.