## School Town of Windfall City et al. v. Somerville et al.

[No. 22,055. Filed April 7, 1914.]

1. TAXATION.—*Exemption from Taxation.* — *Scope.*—*Assessments for Public Improvements.*—A local assessment against real property on account of a public improvement, based on benefits accruing therefrom, is not a tax within the meaning of §10144 Burns 1908, Acts 1891 p. 199, enacted pursuant to Constitution, Art. 10, §1, and exempting school and other property from taxation, and such property is not thereby exempted from such assessments. p. 466.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Assessments.* —*Exemption of School Property.*—*Barrett Law.*—Notwithstanding public policy might forbid the sale of school property to satisfy a lien, other means could be had for the payment of assessments against such property for public improvements made under the Barrett Law (Acts 1899 p. 237, §4288 *et seq.* Burns 1901), and, since exemptions from such assessments are not favored, and are seldom implied, it would seem that the terms of that law were broad enough to authorize the assessment of school property for public improvements made thereunder. (*Sutton* v. *School City of Montpelier* [1902], 28 Ind. App. 315, and *Town of Windfall City* v. *First Nat. Bank* [1909], 172 Ind. 679, criticised.) p. 467.

3. MUNICIPAL CORPORATIONS. — *Assessments for Public Improvements.*—*Statutory Provisions.*—*Implied Repeal.*—The act of 1907 (§§8712, 8713 Burns 1908, Acts 1907 p. 167) providing that the real estate of "all counties, townships, towns, cities and other municipalities" shall be liable for assessments for public improvements, does not have the effect of repealing §§6670, 6671 Burns 1908, Acts 1903 p. 357, making similar provision as to the real estate of school corporations, but was intended to extend the provisions of the latter act. p. 469.

4. CONSTITUTIONAL LAW.—*Confiscation of Property.*—*Assessment of School Property for Public Improvements.*—Sections 6670, 6671 Burns 1908, Acts 1903 p. 357, providing for the assessment of the property of common school corporations for public improvements, and validating and requiring the payment of assessments previously made against such property for such purposes, are not in conflict with §21 of the Bill of Rights. p. 470.

5. CONSTITUTIONAL LAW.—*Fifth Amendment to United States Constitution.*—*State Legislation.*—The 5th amendment to the Federal Constitution does not in any way affect legislation by the State, but is a limitation on Congress and affects federal power only. p. 470.

6. CONSTITUTIONAL LAW.—*Due Process of Law.*—*Deprivation of Property.*—The 14th amendment of the Constitution of the United States, prohibiting the taking of property without due process of law, is not a limitation on the authority of the State legislature over one of the subalternate governmental instrumentalities of the State which it has created and endowed with administrative powers and over the property placed by legislative enactment in its custody and control, and does not affect the plenary power of the legislature to compel taxation, and expenditure of money by municipal corporations for public purposes beneficial to such corporations and in which the general public has an interest, hence §6671 Burns 1908, Acts 1903 p. 357, validating assessments previously made against the property of common school corporations on account of public improvements, and requiring the payment of such assessments, is not violative of such constitutional amendment. pp. 470, 472.

7. CONSTITUTIONAL LAW.—*Legislative Power.*—*Public Schools.*—The legislature has supreme authority over common school corporations, save only as it is restrained by the State Constitution. p. 472.

8. CONSTITUTIONAL LAW.—*Legislative Power.*—*Streets and Highways.*—The legislature has plenary power over highways and streets. p. 472.

9. EXECUTION.—*Property Subject to Execution.*—*Property Assessed for Public Improvements.*—Property in use for public or governmental purposes cannot be sold on execution or other legal process, and the rule, which is founded on public policy, prohibits the sale of public school property to pay local assessments for public improvements. p. 473.

10. WORDS AND PHRASES.—*Public Policy.*—Public policy is what the people in their fundamental law have declared it to be, or what the legislature, acting within its powers, has enacted, or the interpretation placed upon the laws, fundamental or occasional, by the courts. p. 473.

School Town of Windfall City *v.* Somerville—181 Ind. 463.

11.  MUNICIPAL CORPORATIONS. — *Assessments for Public Improvements.—Payment in Instalments.—Contract.—*An agreement entered into by a property owner pursuant to the act of 1889, as amended in 1891 (Acts 1891 p. 323, §4291 Burns 1901), to secure the right to pay a public improvement assessment in instalments, is deemed to be a new and independent undertaking, upon a sufficient consideration, which imposes upon the person executing it a personal obligation to pay the assessment and subjects him to a personal judgment.  p. 474.

12.  MUNICIPAL CORPORATIONS.—*Assessments for Public Improvements.—Assessment of School Property.—*The legislature was acting within its authority in the enactment of §§6670, 6671 Burns 1908 (Acts 1903 p. 357), providing for the assessment of school property for public improvements, authorizing the payment of such assessments on the instalment plan on waiver of irregularities, and requiring the payments to be made from the special school fund, and such provisions are valid even though other provisions therein implying authority to foreclose and sell are unenforceable, and, in view of the fact that the Barrett Law (Acts 1899 p. 237, §4288 *et seq.* Burns 1901) at least gave color of authority to make such assessments, and since there is no constitutional inhibition against retrospective statutes of its character, the provisions of §6671 Burns 1908 (Acts 1903 p. 357), validating assessments previously made against school property for public improvements under the Barrett Law, and authorizing their payment, are valid, and authorize a personal judgment against a school corporation for unpaid assessments.  p. 475.

From Tipton Circuit Court; *Leroy B. Nash,* Judge.

Action by Peter C. Somerville and another against the School Town of Windfall City and another.  From a judgment for plaintiffs, the defendants appeal.  *Affirmed.*

*W. O. Dean* and *J. R. Coleman,* for appellants.

*Finley P. Mount,* for appellees.

Cox, J.—In 1895 appellants jointly owned and since have owned a lot abutting on a public street of the civil town of Windfall City, which they have at all times used jointly for public school purposes.  In 1896 the board of trustees of the civil town proceeded under the law, familiarly known as the Barrett Law (Acts 1889 p. 237, §4288 Burns 1901), to improve the abutting street with a brick paved roadway.

This proceeding followed, regularly in all respects, the provisions of the statute and resulted in the completion of the improvement, and the assessment of the cost of it against the abutting property. A part of the cost was assessed against the school lot of appellants and they, with others, executed the waiver, provided by the law, of all objections to the illegality or irregularity of their assessment, and agreement to pay the same, with interest, in ten annual instalments. Thereupon, in 1897, bonds were issued to cover the amount of such assessments and interest maturing one each year after date for ten years. The last two of these bonds came into the possession of appellees and they in this action sued appellants to recover thereon, praying for a judgment for the amount of unpaid instalments assessed against the school lot and interest, for foreclosure of a lien against the lot for the amount and for an order requiring appellants to pay the judgment within 30 days, failing to do which, that the property should be sold by the sheriff as other property is sold on execution. A personal judgment only was rendered for the sum of $842.15, and therefrom this appeal is prosecuted.

The appeal is based on the claim that school property·was not subject to assessment for local improvements at the time of the proceeding involved in this case and that there was no valid law authorizing the judgment rendered.

The Constitution provides: "The general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes as may be especially exempted by law." Constitution, Art. 10, §1. Pursuant to the authority granted in this provision, the General Assembly, by a provision in the general tax law of 1891, exempted from taxation school property together with other property within the class men-

tioned in §1, Art. 10, *supra.* §10144 Burns 1908, Acts 1891 p. 199. But the rule is general and well established that a local assessment against real property, based on benefits which accrue to it from the improvement for which the assessment is made, is not a tax within the meaning of such provisions and that they do not serve to exempt property from such assessments. 1 Cooley, Taxation (3d ed.) 362; 2 Cooley, Taxation (3d ed.) 1228; 1 Page & Jones, Taxation by Assessment §42; Welty, Assessments §§169, 170; Hamilton, Special Assessments §282, n. 13; 2 Elliott, Roads and Streets (3d ed.) §670; *Palmer* v. *Stumph* (1868), 29 Ind. 329; *Reinken* v. *Fuehring* (1892), 130 Ind. 382, 30 N. E. 414, 30 Am. St. 247, 15 L. R. A. 624; *Rausch* v. *Trustees, etc.* (1886), 107 Ind. 1, 8 N. E. 25.

The law under which the improvement here involved was made, provided for the assessment of the cost against the abutting property in proportion to the amount of
2.  benefit which the improvement brought to the property. The terms of the statute applied to all real property, no matter what the character of its use or ownership, except that it was provided that property of the State should not be assessed without the written consent and approval of the treasurer and auditor of state. Acts 1889 p. 237, §4288 Burns 1901. As exemptions from such burdens are not usually favored, they are seldom implied and it would seem that the words of the statute are broad and comprehensive enough to authorize the assessment of the property of school corporations and other municipal subdivisions of the state and to invest their officers with authority to waive irregularities and agree to pay in instalments as therein provided, in common with those holding title to other property affected by the improvement, even though a wise and settled public policy which has been declared in the Constitution and statutes providing for the establishment and perpetual maintenance of a system of public schools might forbid the sale of the property on

execution or order to satisfy a lien, as other means are open to the payment of such assessments without resorting to such sale. The provisions for a special school tax and its uses appear to be ample to cover the cost of such an improvement as a benefit to the school property. But the necessity of deciding whether the Barrett Law should be so construed does not lie before us. The identical question has been before the Appellate Court and it reached a conclusion contrary to the view suggested above. *Sutton* v. *School City of Montpelier* (1902), 28 Ind. App. 315, 62 N. E. 710. In that case it was held that, in the absence of express authorization by the law, the civil town could not impose an assessment for a street improvement on abutting school property and the officers of the school town could not waive irregularities and agree to pay the assessment. The opinion of the court in the case gives scant consideration to the questions involved and decided in proportion to their importance. No petition to transfer was filed and therefore the case never received the consideration of this court. A declaration of the same rule was made by way of a *dictum* in the opinion, on petition for rehearing, of Jordan, J., in *Town of Windfall City* v. *First Nat. Bank* (1909), 172 Ind. 679, 694, 87 N. E. 984, 89 N. E. 311. Following the decision of the Appellate Court in *Sutton* v. *School City of Montpelier, supra,* the General Assembly passed an act obviously intended expressly to bring school property within the general provisions of the Barrett Law. This act, omitting the enacting clause, reads as follows: "Section 1. That all common school corporations of this State shall hereafter possess the same powers and be subject to the same duties and liabilities in respect to municipal assessments for the cost of public improvements affecting their real estate that private owners of real estate possess or are subject to, and that the real estate of such corporations shall be subject to liens for such municipal assessments for public improvements in all cases where the same property would be s

subject had it, at the time the lien attaches, been owned by a private owner, except that no penalty or attorney's fee in respect of any such municipal assessment shall be collectible from any such school corporation.   Section 2.   Whenever any such public improvement has been heretofore made and it has been paid for by a common school corporation out of its special school revenue, the act of the corporation in making the payment is hereby validated, and in every case where such an improvement has heretofore been made, but the cost has not yet been paid, where, if the real estate had been at the time in private ownership, a valid municipal assessment lien would have existed for the cost thereof, and such a lien has been sought to be taken, which lien would, as against a private owner, be valid, the same as against such common school property, is hereby validated and made as enforceable as it would be had the property been, at the time the lien was sought to be taken, in private ownership, but no penalty or attorney's fee shall be collectible; and it is hereby made the duty of every such common school corporation to pay and discharge such lien out of the special school revenue, and not otherwise appropriated.''

Acts 1903 p. 357, §§6670, 6671 Burns 1908.  The act contained a third section which declared an emergency.   Another act was passed at the session in 1907, almost identical in its provisions but it relates to assessments for municipal improvements of the real estate of ''all counties, townships, towns, cities and other municipalities'' of the State.  Acts 1907 p. 167, §§8712, 8713 Burns 1908.  Counsel assume that the latter act superseded the former and wage their controversy over the effect and validity of the latter on the theory that it applies to the facts of the case before us.   It seems apparent that the legislature did not intend to supersede the act of 1903 by that of 1907, but by the latter to extend the provisions to other classes of public property.

The case is meagerly briefed for appellants but we

understand that a reversal of the judgment of the trial court is demanded by the several assignments of error on the ground that as the school property was not subject to assessment for the improvement under the law as it was at the time it was made, any subsequent act of the legislature assuming to validate the assessment and requiring its payment would be in contravention of the clause of §21 of the Bill of Rights of our State Constitution (Art. 1, §21) which provides that no man's property shall be taken by law without just compensation, and of the due process of law clauses of the 5th and 14th amendments to the Constitution of the United States. Counsel for appellants stop with the

4. assertion that this legislation violates §21 of the Bill of Rights and make no attempt to point out wherein it operates to permit anyone's property to be taken without just compensation. No such vice in it is apparent. *Hanly* v. *Sims* (1911), 175 Ind. 345, 353, 93 N. E. 228, 94 N. E. 401. The 5th amendment to the Federal Constitu-

5. tion does not in any way affect the legislation before us for consideration, for that amendment is a limitation on Congress and restricts federal power only. It has no application to state legislation. *Barrett* v. *State* (1911), 175 Ind. 112, 93 N. E. 543, and cases there cited. The further contention of counsel for appellants that the

6. act of 1903, *supra,* in its retroactive effect is in violation of the due process of law clause of the 14th amendment is pressed on the theory that as the proceeding for the improvement, so far as it was against the school property, was, under the decision of the Appellate Court, without authority of law, any notice and hearing on the question of benefits given to appellants in that proceeding must be regarded as no notice and no hearing, and as the act of 1903, commands payment of the assessment and does not provide for another hearing on the question of benefits, due process of law is therefore denied. However this constitutional provision might restrict the right of the legisla-

ture to cure and give life to an assessment against private property made without authority of law, and to require the owner to pay under like circumstances, it is hardly conceivable that it limits the authority of the legislative body over one of the subalternate governmental instrumentalities which it has created and endowed with administrative powers and over the public property placed by legislative enactment in its custody and control. It is true that it has been considered in some jurisdictions that, as municipal corporations such as cities and towns possess a dual character—one essentially local, dealing with interests peculiar to the people composing it, and the other that of an agency of the state, dealing with matters that concern the state at large—they are in their first character, in a sense, private corporations and, under the support of the doctrine of implied constitutional guaranty of local self-government, may invoke the protection of the guaranty of due process of law against an attempt upon the part of the legislature to compel them to levy taxes and expend money for something purely local without their consent. Cooley, Const. Lim. (7th ed.) 337; 10 Am. and Eng. Ency. Law (2d ed.) 298, n. 5; *State, ex rel.* v. *Detroit* (1873), 28 Mich. 228, 15 Am. Rep. 202; *Atkins & Co.* v. *Town of Randolph* (1858), 31 Vt. 226. But the almost uniform judicial utterance is to the effect that the due process clause does not fetter or clog the plenary power of the legislature to compel taxation, and expenditure of money by such municipal corporations for some public purpose which is beneficial to such municipalities and in which the general public has an interest; and within such purpose is the opening, improvement, and maintenance of public highways. *State, ex rel.* v. *Williams* (1896), 68 Conn. 131, 35 Atl. 24, 48 L. R. A. 465, where the cases are collected in an elaborate note. This case was affirmed by the Supreme Court of the United States (*Williams* v. *Eggleston* [1898], 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047), where it was held that so far as the Constitution of the United States

School Town of Windfall City *v.* Somerville—181 Ind. 463.

was concerned, the legislature might create a taxing district, determine what territory should belong to it and what property should be considered as benefited by a proposed improvement. "And," it was said, "in so doing it is not compelled to give notice to the parties resident within the territory or permit a hearing before itself, one of its committees, or any other tribunal, as to the question whether the property so included within the taxing district is in fact benefited."

By §1, Art. 4 of our State Constitution, the people have issued a mandate to the legislature "to provide, by law, for a general and uniform system of public schools."

7. This it has done and created administrative school corporations to which it has delegated authority to perform what is declared in the Constitution to be a State function. Manifestly the legislature has supreme authority over these agents of it, save only as it is restrained by the State Constitution. *State, ex rel.* v. *Ogan* (1902), 159 Ind. 119, 121, 63 N. E. 227, and cases there cited. The

8. authority of the legislature over streets and highways is equally broad. 2 Cooley, Taxation (3d ed.) 1297; 1 Elliott, Roads and Sts. (3d ed.) §§25, 26. Now, we have here involved school corporations which are purely subalternate governmental agencies dealt with by the

6. legislature by the act of 1903, *supra*, in relation to a matter of general public concern and of obviously material benefit to the property held by these school corporations. It is clear that the act is not in violation of the 14th amendment, as claimed.

What we have said disposes of all the objections which counsel for appellants specifically lodge against the validity of the act of 1903, *supra*. But in view of the broad importance of the matters involved in the act, it is not out of place to extend somewhat the consideration. The intent of the act is to give to the Barret Law and succeeding acts relating to the improvement of streets by assessment, the very effect

which the general terms used would warrant, except as to penalties and attorney's fees, unless otherwise restricted. And that purpose is to include the abutting real property of school corporations in the taxing district; to impose a lien for the assessment made against it and to authorize a foreclosure of the lien; and to authorize a waiver of irregularities in the proceedings and a promise to pay in ten annual instalments. The act operates not only prospectively on proceedings thereafter to be had, but retrospectively to cure proceedings, such as this, which were undertaken before the decision in *Sutton* v. *School City of Montpelier, supra,* and in which school corporations were made parties and their property assessed. A full consideration, therefore, would necessarily lead to an inquiry into the scope of the authority of the legislature both to authorize and provide for the enforcement of assessments and to validate such as had been made.

It is well settled that property in use for public or governmental purposes cannot be sold on execution or other legal process. *President, etc.* v. *City of Indianapolis* (1859), 12 Ind. 620; *Lowe* v. *Board, etc.* (1884), 94 Ind. 553; *Klien* v. *New Orleans* (1879), 99 U. S. 149, 25 L. Ed. 430. This rule is generally applied to the sale of school and other real property to pay local assessments for public improvements. 1 Page & Jones, Taxation by Assessment §§582, 586; 2 Page & Jones, Taxation by Assessment §1077; 2 Elliott, Roads and Sts. (3d ed.) §675. The rule is obviously founded on public policy and not on any specific constitutional or statutory prohibition.

10. Public policy is what the people in their fundamental law have declared it to be, or what their governmental agency, the legislature, acting within its powers, has enacted, or the interpretation of these laws, fundamental or occasional, by the courts. The necessity for acquiring and holding, permanently and without interruptions, property for governmental purposes and for schools is involved

in the Constitution itself in its provisions erecting the framework of government and for a school system. This being so it might well be doubted whether the legislature is not restricted in its right to provide for the foreclosure and sale of school property to satisfy the lien of assessments for street improvements as is done by the act of 1903, *supra,* either prospectively or retrospectively, or to permit its sale on execution.

This question is not, however, necessarily involved in the case before us, as the court did not in its judgment declare and order foreclosed a lien against the school property. Nor did it decree a sale of the school property to satisfy such lien. . While execution and sale thereon might not be had to satisfy the judgment, a mandate to compel its payment would be awarded. Appellants, as the holders of abutting real estate, were made parties to the proceeding to improve the street in question, under a law which, it was deemed, authorized the assessment of their property as beneficially affected, in common with the other abutting property held in private ownership. They appeared by their officers and, electing to pay the assessment in ten yearly instalments with interest, signed an agreement to waive irregularities and to pay as provided by the law. On this agreement the trial court rendered a personal judgment against appellants and the question before us is as to the validity of that judgment. Such an agreement entered into by a property

11. owner pursuant to the act of 1889, as amended in 1891 (Acts 1891 p. 323, §4291 Burns 1901), to secure the right to pay an assessment in instalments has uniformly been held to be a new and independent undertaking, upon a sufficient consideration, which imposes upon the person executing it a personal obligation to pay the assessment and subjects him to a personal judgment. *Hayes* v. *Shirk* (1906), 167 Ind. 569, 578, 78 N. E. 653; *Wayne County Sav. Bank* v. *Gas City Land Co.* (1901), 156 Ind. 662, 59 N. E. 1048; *Edward C. Jones Co.* v. *Perry* (1901), 26 Ind.

App. 554, 57 N. E. 583; *Close* v. *Twibell* (1911), 47 Ind. App. 290, 92 N. E. 377.

While there is much confusion and conflict of opinion on the question of the assessment of school property for local improvements it is said in a late work: "There is no doubt that the state can make it subject to such assessments, unless restrained by the constitution, or, possibly, by some lawful contract or trust where it comes from the United States; but the difficult matter is to determine whether it has done so. Here, as in other cases where public property is involved, the subject is viewed by different courts from two different standpoints. In some jurisdictions the courts start with the proposition that all property covered by the general terms of the statute, and not specifically exempted, is included, and that school property, if specially benefited at least, as it often may be, is assessable for local improvements. Other courts, however, finding it inconsistent with the special use to which school property is devoted, especially where the land has been given by the United States to the state in trust for school purposes, and deeming that the legislature would not so divert it or the school funds to the payment of local assessments without specifically or very clearly so providing, hold that such lands are not subject to local assessment." 2 Elliott, Roads and Sts. (3d ed.) §676 and cases there cited; see, also, 2 Cooley, Taxation (3d ed.) 1234-1236; 1 Page & Jones, Taxation by Assessment §586; 2 Page & Jones, Taxation by Assessment §1077; Hamilton, Special Assessments §281; 28 Cyc. 1117. In *Edgerton* v. *Huntington School Tp.* (1890), 126 Ind. 261, 26 N. E. 156, the sale of congressional school township land to satisfy an assessment in aid of the construction of a public ditch was enjoined and the assessment held unauthorized. This was done on the grounds that the ditch law did not expressly authorize the assessment; that such lands were granted by Congress in trust for the use and support of the public schools and had

been, with the proceeds of authorized sales thereof, dedicated by the people of the State by constitutional provision to "remain a perpetual fund," which might be increased but never diminished and the income to be inviolably appropriated to the support of the common schools and to no other purpose whatever; that this trust character and the constitutional provision prohibited the sale of such lands on legal process of any kind even if authorized by the legislature; that the ditch law made no compulsory provision for the payment of assessments except the sale of the property assessed; that therefore these considerations excluded any intention on the part of the legislature to include the assessment of such lands in the general words providing for the assessment of lands benefited. In this case this court followed a similar decision by the Supreme Court of Illinois, *People, ex rel.* v. *Trustees, etc.* (1886), 118 Ill. 52, 7 N. E. 262. The Supreme Court of Illinois, while adhering to the decision in *People, ex rel.* v. *Trustees, etc., supra,* as to the assessment of congressional township lands, has later held that although the property could not be sold, city school property could be assessed for street improvements and the assessment enforced by methods provided by law, such as mandamus. *City of Chicago* v. *City of Chicago* (1903), 207 Ill. 37, 69 N. E. 580; *Board of Education* v. *People, ex rel.* (1905), 219 Ill. 83, 76 N. E. 75. See, also, *City of Sioux City* v. *Independent School District* (1880), 55 Iowa 150, 7 N. W. 488. The very foundation of the decision in *Edgerton* v. *Huntington School Tp., supra,* was that no way, except through the sale of the property assessed, was provided by the act for the enforcement of the assessment. In the act of 1903, the assessment is not only expressly authorized but its payment is provided for otherwise than by a sale of the property by the legislative mandate therein that "it is hereby made the duty of every such common school corporation to pay and discharge such lien out of the special school revenue." The scope

of the uses for which public school corporations are given authority to levy special school taxes is broad enough to include the cost of improving streets upon which their property abuts. §6441 Burns 1908, Acts 1905 p. 491. We have no doubt, and so hold, that the legislature was acting with authority when it provided for the assessment. of school property, when it authorized school corporations to waive irregularities and promise to pay such assessments for the privilege of paying in instalments, and when it commanded them to pay out of the special school fund. This much may stand even though the provisions implying authority to foreclose and sell are unenforceable. Possessing the authority to permit the assessment of school property and require school corporations to pay, in proceedings to be thereafter had, we see no impediment to the declaration that the retroactive curative provisions of the act of 1903, *supra,* are valid. The Barrett Law at least gave color of authority to municipal corporations to make such assessments. The Constitution contains no inhibition against retrospective statutes of this character. Cooley, Const. Lim. (7th ed.) 528 *et seq.; Marks* v. *Trustees, etc.* (1871), 37 Ind. 155; *Johnson* v. *Board, etc.* (1886), 107 Ind. 15, 8 N. E. 1; *Schneck* v. *City of Jeffersonville* (1899), 152 Ind. 204, 52 N. E. 212; *Hanly* v. *Sims, supra; Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 57 N. E. 920; *New Orleans* v. *Clark* (1877), 95 U. S. 644, 24 L. Ed. 521; *Guthrie Nat. Bank* v. *Guthrie* (1899), 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796, note 48 L. R. A. 473.

As the balance due appellees on appellants' assessment was a mere matter of computation and as the act of 1903, *supra,* expressly placed the duty to pay on appellants, no reason occurs to us why appellees might not have compelled payment by mandamus, but that argues nothing against the vadility of the judgment for the amount.

Judgment affirmed.

NOTE.—Reported in 104 N. E. 859. As to exemption of school property from assessment for local improvements, see 33 Am. St. 407; 12 Ann. Cas. 419; Ann. Cas. 1913 D 1103. As to the liability to local assessments for benefits of property exempt from general taxation, see 35 L. R. A. 33; 18 L. R. A. (N. S.) 451; 32 L. R. A. (N. S.) 303; 44 L. R. A. (N. S.) 57. For the liability of public property to assessments for public improvements, see 44 L. Ed. U. S. 96.