Dennis *v.* Maynard et al.

Ezekiel Dennis, Plaintiff in Error, *v.* Hiram R. Maynard et al.,
Defendants in Error.

ERROR TO WINNEBAGO.

Four persons were named commissioners, to act until an election, and they and their successors were named a corporation, with power to declare the rate of taxation, and collect taxes, apply the same to the support of a bridge, &c.; the act did not state how many should constitute a quorum. *Held,* that a majority could act. And that a warrant issued by them without a seal (none being required by the act) was good.

In such a case, where the act directs that a list of the amount and valuation of the taxable property, (and not of the property itself,) shall be made in a particular way, it is good.

The burden of constructing and repairing roads and bridges is upon the counties, unless by custom or statute it is placed elsewhere, and this burden may be divided between the county and smaller municipal divisions, at legislative discretion.

The Rockford Bridge Company is not a private individual enterprise.

The legislature may direct the county authorities to allow just claims out of the public treasury, or may fix the amount and direct the means to be raised by taxation for their payment.

The public, county, and township funds are under legislative control.

County taxes create a lien, and take precedence and priority to judgments, nor is any property free from levy and sale for the payment of them.

This cause was heard before Sheldon, Judge, at April term, 1854, of the Winnebago Circuit Court.

F. Burnap, for plaintiff in error.

J. Marsh, for defendants in error.

Scates, J.    Maynard distrained a horse of Dennis, under a warrant from Shaw, Wyman, and Crawford, three out of four of the "Bridge Commissioners of the Rockford Bridge," made under the act of the legislature of 25th of February, 1847.

Dennis brought this action of trespass, to which they pleaded not guilty, and four special pleas justifying the taking under the said act.

To the special pleas, the plaintiff put in thirty-seven replications. Issues were joined on the 5th, 7th, 11th, 30th, and 31st, and a trial and verdict for the defendants. And the only question presented upon this branch of the case, is upon the admissibility in evidence of the distress warrant and the tax lists.

The objections taken to the warrant, were for want of a corporate or other seal, and that three only of the four commissioners signed it; and there was no proof that more than three commissioners were acting.

The act was passed (see acts 1847, special, p. 14), for the maintenance of this bridge, for which purpose it authorized a special tax upon the property in Rockford precinct, not exceeding fifty cents on the hundred dollars' worth. Shaw, Wyman, Crawford, and McKinney were appointed commissioners to act until the first election therein provided; and they and their successors were made a corporation under the name of the " Bridge Commissioners of the Rockford Bridge," with power to declare the rate of tax; and for the purpose of its collection, were directed to make out and deliver to the collector, lists, from the last assessment of the county, of all the persons liable to taxation in the precinct, and of the amount and valuation of the taxable property; and also a warrant, taking bond from him, and appointing a treasurer. They were further empowered to "apply the proceeds of such tax to the maintenance and repair of the Rockford Bridge, and to defray the amount of indebtedness incurred in erecting and repairing such bridge." But all accounts were to be stated and settled before any allowance was authorized on past indebtedness, and they were to determine what amount should be allowed to the latter object. The commissioners were required to keep the bridge in good repair from funds so collected, and to take an oath to discharge their duties. Successors were to be chosen at the next general election, on the first Monday of August, 1847, and annually, by taking the two highest on the list of candidates, on each side of Rock river.

The act is silent as to how many may constitute a quorum, in which case the general principle of the common law governs. By it the majority may act. Ang. & Am. on Corp. 459, et seq.; 1 Kyd. on Corp. 422; 2 Kent, Com. 293; Withmel v. Gartham, 6 Term R. 387; Field v. Field, 9 Wend. R. 394; Morey v. Beekman Iron Co. 9 Paige, R. 188.

The modern doctrine has relaxed the old rule in relation to the use of a seal, and now the acts, generally, of a corporation are good without, 2 Kent, Com. 289, when acting within the range of its legitimate purposes. The Bank of Columbia v. Patterson, 7 Cranch, R. 299.

This act does not authorize or require a seal, nor does the general law in relation to warrants for distress for rent. R. S. 334, §§ 7, 9. This warrant, we are of opinion, was properly made by the three commissioners, and is valid without seal.

Dennis *v.* Maynard et al.

The objections to the tax lists, are for want of an enumeration or specification of the personal property, and because they were not made from the last assessment. These objections are equally groundless. The act directs the commissioners to make lists of all the persons liable, and of the amount and valuation of the taxable property, not of the property itself. This was done, and these lists attached to the warrant as shown by a witness, but appear to have become separated by use. The other objection goes to the date of the warrant as fixing what shall be deemed the last assessment. The act speaks of the lists being taken from the last assessment. This was done in March, from the assessment of the previous year. Plaintiff not paying voluntarily, the warrant was made in the fall, after another assessment, it may be, though not shown to have been so.

Principles well settled by the decisions will dispose of the questions on the demurrers to the remaining thirty-two replications, together with those already laid down.

The 6th replication set up a failure to elect one of the commissioners, but three constituted a quorum, and so the replication is no answer; nor would it have been to a plea setting up the fact that the warrant was made by three only. So the 7th, 18th, 21st, 36th, and 37th, amount in substance to the same thing, and are fully answered by the principle already stated.

The 1st, 2d, 3d, 4th, and 23d, present the ground that the bridge was not a public bridge, and neither the public at large of the county, nor of Rockford and its neighborhood, were bound to repair it.

The burden of opening and repairing roads, and of building and repairing bridges, is, by the common law, upon the counties, unless by custom or statute it is shown to be elsewhere, as decided in The People on relation of Hoes et al. *v.* Canal Trustees, 14 Ill. R. 402. This burden may be divided upon and between the county and smaller municipal divisions, and so may the jurisdiction and duties of supervision and repair, as the legislature may think proper. The whole subject is under legislative discretion. In this case they have created a special corporation, and assigned it the special, limited duty, of keeping up this bridge, by taxes which are imposed upon a single township or precinct. This act was presented to the court on the face of the pleas, and the court could not have sustained the replications without deciding the act void, for want of power to pass it.

There seems to be a misapprehension of the true character of this bridge enterprise from the beginning. The public spirit

of the people of the town and neighborhood had led them to attempt, by a voluntary contribution, to do more than was imposed by the execution of the laws in relation to the roads and bridges. They obtained an act of the legislature to give form and sanction to the expenditure of their donations to build this bridge, by men chosen and appointed by their wish in the act. The bridge was erected at an expense exceeding their contributions. To provide for its constant repair and meet this debt, a petition was presented to the legislature asking authority to levy a tax, and the act of 25th of February, 1847, was passed to meet the exigency.

The misapprehension is embodied in the 22d, 24th, 25th, 26th, 27th, 28th, and 29th replications, and in substance shows and treats the whole as one of private individual interest. That the funds subscribed had been injudiciously squandered, and the building committee involved in debt; and that the petition for this last law had been fraudulently obtained, and an imposition thereby practised on the legislature, to procure reimbursement of the debt incurred in building the bridge; and that the bridge was the private property of the building committee. And, therefore, the act is a judicial award of a debt, for payment of which the tax is levied. The entire conception is erroneous, and had it been presented in this shape years ago, much expensive and useless litigation might have been saved by an earlier decision. So far as raising, collecting, and expending the private subscription was concerned, it was a private matter, but upon a public object. But it was at all times competent for the legislature, without petition, to require the building of this bridge, by a general county tax, or by a precinct or township tax, if the policy was thought best to subdivide the territorial jurisdiction and supervision, and a distribution of these public burdens to the lesser divisions, within which the object was located. So the act is not judicial. The State does not allow itself to be sued, but it may here investigate and determine its own indebtedness, and assume the debts due to, or from others. So it may direct the county authorities to ascertain and allow just claims upon the public treasury, or may ascertain and fix that amount, and direct the raising of means, by taxation, for its payment. The public, county, and township funds are under legislative control, and so decided in The County of Pike *v.* The State, 11 Ill. R. 202; and The County of Richland *v.* The County of Lawrence, 12 Ill. R. 1. These local municipal corporations are created for convenience in the police arrangements, but their powers and duties remain subject to the public will, through the legislative body. Under these views and prin-

ciples, we perceive no objection interposed by the constitution, or of private or vested rights, to a legislative direction to refund moneys advanced for the public use; or to the purchase of private property for their accommodation. I am speaking of the question of legislative power, and as to this, I can perceive no lack, in their direction even, to levy a tax for the part as well as the whole bridge. What has been said in relation to the tax lists, has disposed of the 8th, 9th, 10th, 11th, 12th, and 13th replications. The 31st simply alleged that commissioners were not sworn, and is a simple traverse of one fact stated in the pleas, and should have concluded to the country; the same may be said of the 20th. The 14th, 15th, 16th, 17th, 19th, 32d, 33d, 34th, and 35th, allege that the horse was a beast of the plough, used for tillage of plaintiff's farm in the precinct, that this was a common law distress, and not salable, yet defendants sold the horse on eleven or twelve days' notice.

This class is fully answered in the case of Dunlap *v.* Gallatin County, ante, p. 7, in which county taxes are held to create a lien, and take precedence and priority to judgments. All the principles applicable to the prerogative priority of the crown in this respect, equally apply to the public dues for taxes, and the lien has been repeatedly declared by statute, nor are we advised that any property is exempt from levy and sale for the public dues of this kind.

*Judgment affirmed.*