## THE CITY OF AURORA *v.* WEST and Another.

Section 18, of the act of *February* 14, 1848, incorporating the city of *Aurora*, provided that the city council, whenever a majority of the qualified voters of the city might require it, should have power "to take stock in any chartered company for making *roads to said city*," &c.; that to raise funds for the payment of such stock, the city might issue its bonds, &c.; and that the amount of stock subscribed in any one chartered company should not exceed 50,000 dollars. In *September*, 1850, the city council subscribed 50,000 dollars of the capital stock of the *Ohio and Mississippi Railroad Co.*, and, on the first day of *January*, 1852, issued city bonds for the amount, bearing interest payable on the first day of *January*, annually. The railroad was located through the city, but at what time does not clearly appear. The interest was not paid, and this suit was brought to recover the amount. Judgment below for the plaintiffs. The city appeals. *Held*, that the legislature was competent, under the constitution of 1816, to empower the city to subscribe the stock; that the constitution of 1850 continued and confirmed the power in the city; that the *railroad through* the city was a *road to* the city, within the meaning of the charter; and that the city council acted within their authority.

The present constitution authorizes the legislature to create municipal corporations, and imposes no limit as to the powers to be conferred upon them.

The law creating a corporation is the index to the objects for which it was created, and to the powers with which it is endowed, if the grant be constitutional, and do not exceed the power of the legislature itself.

The power to subscribe stock in chartered companies for making roads and other internal improvements, is a legitimate part of the authority of a municipal corporation, and within the purpose for which it is created.

Where a city had such a power under the old constitution, it remains unimpaired under the new.

It is only the taking of specific pieces of the property of an individual, by virtue of the right of eminent domain, that is prohibited by the constitution, without special compensation. The prohibition does not extend to the taxing power.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—Suit against the city of *Aurora*. Demurrer to the complaint overruled. Answer. Demurrer to the answer overruled. Reply. Demurrer to the reply overruled. Judgment for the plaintiff. Exceptions were taken to the overruling of the demurrers.

The case is as follows:

The city of *Aurora* was incorporated by an act of the General Assembly of *Indiana*, entitled "An act granting to the citizens of the town of *Aurora*, in the county of *Dearborn*, a city charter," approved *February* 14, 1848, the eighteenth section of which, being the provision of the act having immediate reference to the question at issue, is as follows:

"SEC. 18. The said city council, whenever a majority of the qualified voters of said city require it, shall have power, and they are hereby authorized to take stock in any chartered company for making roads to said city, or for watering or lighting said city: *Provided*, That no such stock shall be subscribed on the part of the city, until a majority of the qualified voters thereof have signified their assent thereto, that they are in favor of the subscription for such stock by the city council; and to raise funds for the payment of such stock, the bonds, under seal of said corporation, payable in such manner and at such time as they may deem proper and expedient, and bearing interest at six per centum per annum, payable annually, and therein pledge to the holders of such bonds that the stock so taken, with all the dividends thereon accruing, shall be held and firmly bound for the payment of the said bonds and accruing interest on the same, and the interest coupons attached to said bonds, shall be received at all times when due, for the payment of all taxes due to said city, the amount of stock subscribed in any one chartered company not to exceed 50,000 dollars."

In *September*, 1850, the city council of the city of *Aurora*, subscribed for 50,000 dollars of the capital stock of the *Ohio and Mississippi Railroad Company*, and in payment of that subscription issued the bonds of the city to the amount of 50,000 dollars, the interest on which was payable on the first day of *January*, annually.

May Term,
1857.

THE CITY OF
AURORA
v.
WEST.

The bonds were issued on the first day of *January*, 1852, being under the new constitution. When the railroad was located through the city of *Aurora*, does not clearly appear. The bonds, &c., were assigned to *West* and *Torrence*—the interest was not paid when due, and this suit was brought to recover the amount.

The suit, as we have seen, was successful below. The city appeals, and claims that the judgment of the Circuit Court should be reversed. It is insisted that the bonds of the city are void. Counsel argue thus:

"1. That the city council of *Aurora* was only authorized to 'take stock' in a 'chartered company for making roads to said city;' that the *Ohio and Mississippi Railroad Company* was not designed for any such purpose, but with views and objects foreign to such purpose, and that, therefore, as a necessary consequence, the subscription made by the city council to the capital stock of that company was unauthorized and void.

"2. That as the city of *Aurora* was not, by the act incorporating the railroad company, a point on the line of the contemplated railroad, and the road not being located to or through the city of *Aurora* at the time of the subscription, the same was unauthorized and void, even if it would have been valid, if either of the states of things had existed at the time of the subscription; and that any act predicated on that void subscription was a nullity.

"3. That the term 'road,' as used in the city charter, must be taken in its general sense, as synonymous with 'highway'—'public thoroughfare'—and not as a private enterprise, gotten up for private purposes—in its very nature a monopoly, such as must be the case with every railroad; and,

"4. That the state cannot confer on corporations designed simply for the purposes of local municipal government the powers sought in this instance to be exercised by, and enforced against, the city of *Aurora*, to incur heavy liabilities by subscribing to the capital stock of companies having general—even national—and not merely local purposes in view. We insist that the power never did exist; and that

if it ever did, the spirit of the present constitution is in di-
rect hostility to it, and that the bonds issued in 1852 were
issued without authority."

The provision as to the route of the *Ohio and Missis-*
*sippi Railroad,* in the charter of the company, was—

" SEC. 13.   That the president and directors of said com-
pany shall be, and they are hereby, invested with all the
rights and powers necessary and proper for the survey, lo-
cation, construction and repairing of a railroad, on the
most direct and practicable route between *Lawrenceburgh*
on the *Ohio* river, and *Vincennes* on the *Wabash* river, hav-
ing in view the interest of the company, and the conve-
nience of the citizens of the state of *Indiana,* and to extend
eastwardly on the like most direct and practicable route to
the city of *Cincinnati,* in the state of *Ohio;* and to extend
westwardly on the like most direct and practicable route
through the state of *Illinois* to the city of *St. Louis,* in the
state of *Missouri.*"

We shall not, in examining the case, follow the order
pursued by counsel in their argument.   We will first con-
sider the last position assumed by them.   It involves the
important question in the cause.

The internal improvement of a state by means of roads
and canals, has always been a legitimate subject to call
into exercise the legislative power of the state.   It has
been, and still is, thus in *Indiana.*   Under the old constitu-
tion, such improvements could be carried on by means of
loans, creating a state debt.   Under the new, they cannot
be carried on by that particular means by the state, but
must be paid for by taxes raised as the works progress.
This is an express limitation on the exercise of the power
by the state, inserted in the constitution.   The same limi-
tation is imposed upon the exercise of a like power by the
counties of the state.   Section 6, of article 10, reads:

" No county shall subscribe for stock in any incorporated
company, unless the same be paid for at the time of such
subscription; nor shall any county loan its credit to any in-
corporated company, nor borrow money for the purpose of
taking stock in any such company; nor shall the General

Assembly, ever, on behalf of the state, assume the debts of any county, city, town, or township, nor of any corporation whatever."

This section, by implication, concedes the power to counties to take stock, at all events by permission of the legislature, in companies chartered to construct works of internal improvement—under the new constitution by making cash payment at the time, under the old, as we have seen, without—and it does not impose any limitation upon the power of cities touching the matter, while it shows that the subject of their taking stock in such companies, must have been before the constitutional convention.

The provisions in the new constitution, then, on the question under consideration, amount to this: they admit the power of the state to construct works of internal improvement, but forbid her, in her state capacity, to create a debt for the purpose. They grant that the power may be conferred upon counties to take stock in companies chartered to construct such works, but require simultaneous payment. They do not prohibit the conferring of the power to take stock upon cities, either by means of cash or credit, or of otherwise aiding these undertakings; but they prohibit the state from assuming any debts cities may contract.

The implication, from these provisions, in regard to cities, if there be any, is in favor of their power to take stock, &c. At all events, if they ever possessed the power, that power is left unimpaired. The convention did not consider that, an inhibition upon the state to construct internal improvements, in her capacity as such, by means of loans, prohibited her from authorizing other agencies to construct them by such means; hence, they proceeded to impose the restriction, as to counties, but did not extend it to cities, though naming them in the same section. The maxim, therefore, that the expression of one excludes the other, must apply.

Suppose the constitution said that the state should not, by means of her own officers and funds, construct railroads, would the provision be construed to prohibit the

state from chartering companies for that purpose? It would
rather imply that they were to be constructed by such
agencies; for an intention to entirely arrest the improve-
ment of the state could not be presumed.

If, then, cities, under the old constitution, or, it would
seem, under, perhaps, any constitution, could be invested by
the legislature with the power of aiding works of internal
improvement, they still can be invested with such power.

The question, therefore, presents itself, can such power
be given to a city? Of the policy of conferring it, we
have said all that it becomes us to say, in *The City of La-
fayette* v. *Cox*, 5 Ind. R. 38, to which we refer. Of the
capacity to confer it, we have not heretofore expressed an
opinion. That is now the question. We have seen that
no express constitutional provision stands in the way of
granting such power to a city, as we hold that the prohibi-
tion in the constitution upon the legislature to create a
state debt, does not prohibit that body from authorizing
cities to create debts. This is our construction of the lan-
guage of the constitution. But it is insisted that the
power is not a legitimate part of the authority of a muni-
cipal corporation—that it is outside of the purpose for
which such corporations are created—and that this is a
sufficient reason for holding them incompetent to receive a
grant of such power. But is not this begging the very
question to be decided? For what precise purposes are
municipal corporations created? How much power, and
no more nor no less, is embraced by the idea of a munici-
pal corporation? We have not been satisfactorily enlight-
ened on this point. If the legislature can confer a little
legislative power upon a city for local objects, can it not
confer a greater amount for the same objects? It would
hardly be said, that cities were created simply to establish
and enforce police regulations—to maintain order amongst
the citizens. By common custom, they establish sanitary
regulations, rules governing markets, &c.; and on what
principle do they exercise these powers? They go further.
They construct streets, side-walks, bridges, &c., within their
limits. They do more. They build wharves to accommo-

date their trade and commerce, coming to them from a distance; they construct water-works—going for the purpose miles beyond corporate limits. They construct works for lighting, &c. These, and other like powers, though not existing in every one, yet, we believe, all concede, may be conferred upon municipal corporations as legitimate, as constitutional, though in their exercise the citizens are not severally equally benefited in proportion to taxes paid. See *Lafayette* v. *Cox*, 5 Ind. R. 38. Now, if a city may build wharves, or take stock in companies created to build them, to foster commerce—may take stock in companies chartered to furnish the people with water, light, &c.—why, as a question of power, may it not take stock in companies for the making of highways to facilitate the bringing in of bread and meat and fuel to the citizens? Are not these of nearly as much importance to them as water, light, &c.? And are not such works, in a special manner, locally advantageous to the city? And where the citizens of a place have seen fit to ask, and the legislature to grant such power, and the citizens have subsequently, in the prescribed mode, exercised it, no constitutional provision forbidding, a Court, whose province is simply to decide what the law is, not what it should be, cannot annul such exercise of power. How much local benefit must an improvement confer to bring it within the spirit of a local one? If a city may build a wharf to accommodate its commerce, may it not, also, a depot? May it not build the track of a road through its corporate limits? May it not, then, put in that amount of stock or bonds to pay the company the sum the depot and track would cost?

The practical application of the power of cities must necessarily change with the progress of science and invention. Before the uses of gas were known, cities did not erect gas-works.

Let it be observed, that, while we think we cannot hold it unconstitutional for a city to aid in the construction of a highway—a legitimate public undertaking, and one which promotes the convenience of all the citizens by facilitating the introduction among them of fuel, bread, &c., thus con-

ferring a local benefit—we mean in no manner to be under-
stood that a city could engage in trade and traffic in those
articles. Such pursuits belong to the individual citizens,
and private corporations. See *Beebe* v. *The State*, 6 Ind.
R. 501.

And for a city to traffic in stocks or bonds, owned by
third persons, might be regarded as such private pursuit.
The investment by the city must be in aid of the public
undertaking—a legitimate object of pursuit by a govern-
ment.

This distinction is important, and should be borne in
mind. It is sometimes said that by taking stock, or other-
wise aiding a railroad, a city compels her citizens to invest
their property in a partnership operation against their will.
It is, in some sense, true. So she does when she takes
stock in, or otherwise aids, a gas or a water-works com-
pany. So does the state thus compel her citizens, in the
same sense, to invest their means in a partnership with her
when she constructs a railroad or canal. The citizen's
money is taken by taxation and invested in the work, and
his dividend, his profits, come back in the tolls, rents, &c.,
paid into the state treasury. So, also, in city investments,
through the city treasury. But these are public undertak-
ings of a governmental character. When prosecuted by state
taxation, the citizen consents to them through his repre-
sentative in the state legislature. When by city taxation,
the citizen consents by his more immediate representative
in the city legislature.

And, beyond doubt, general powers of government, for
local interests, may be exercised as equitably by a city as
by a state administration.

It will also be noticed that we have, thus far, treated the
power conferred upon cities to enact ordinances, levy and
collect taxes, &c., as a delegated legislative power. If it
be such, then legislative power may be delegated, and the
extent to which it may be done in particular cases, must
depend upon the legislature, if the constitution is silent
upon the point, the grant being subject, of course, to the
constitutional limitations upon the legislative power of the

state. See, on this point, Am. L. Reg. pp. 1, 29, 85; *Clarke*
v. *The City of Rochester*, 5 Am. L. Reg. 289. But if the
above-named power of cities is not legislative, and legisla-
tive power cannot be delegated, then this immemorially-
exercised power of taxing, &c., is some other nameless
power conferred by the legislature, and, for aught we are
able to discover, may as properly be exercised for paying
for stock in a railroad running to or through a given city,
whereby a channel is opened for bringing coal, flour, &c.,
to it, as for paying for stock in a company to bring water
to the city. It is true, the water-works may benefit nobody
but the citizens of the city, while the railroad may benefit
the surrounding country, to some extent, at the same time
that it confers a great local benefit on the city—one, per-
haps, greater than the water-works. But, where such is
the case, should the city be deprived of the right to benefit
itself locally, because it cannot do so without also benefit-
ing others? And if the argument is a good one, that cities
are necessarily incapable of aiding any improvement that
may extend beyond the corporate limits, will it not apply
with equal force to states? May it not be said that a state
is created to govern within its territorial limits; and, hence,
that it is unconstitutional for it to aid any work extending
beyond those limits?—that *Indiana*, therefore, could not
aid in the construction of the *Wabash and Erie Canal*, be-
cause it extended into *Ohio?*—that she could not, with
the consent of *Ohio*, construct that portion of the *White-
water Canal*, lying in that state, because it was without her
territorial limits?—that *South Carolina* could not aid in
the construction of a railroad to *Memphis*, in *Tennessee*,
or to *New Orleans*, in *Louisiana?* But is this the doc-
trine? A state can do what its constitution does not, by
positive provision, or reasonable implication, prohibit. The
*United States*, and city corporations, can do only what their
constitutions permit. If the constitution of the *United
States* expressly authorized the government to construct,
with the consent of the states, roads within their limits,
would there be any doubt of her power to do so? If a
state, then, can construct, by permission—if *South Caro-*

*lina* can, with the consent of *Tennessee*, construct a road in that state—cannot a city of a state be authorized by the state to take stock in a road extending beyond her corporate limits?

We think the proposition may be asserted, that one government may act within the territorial limits of another, with the consent of the latter.

Another objection must be here noticed, though not presented by counsel. It has been suggested, that taxation to pay the city indebtedness sued upon, is the taking of private property for public use; and the suggestion is true. And it is the important fact in the case which renders the taking legal. Property may be taken, through the taxing power, for public use, without any other compensation than the common benefit which the appropriation and expenditure of the proceeds of the tax produce. It is only the taking of specific pieces of the property of an individual, by virtue of the right of eminent domain, that is prohibited by the constitution, without special compensation. See the distinctions touching this subject clearly drawn in *The People* v. *The Mayor, &c., of Brooklyn*, 4 Comst. 419. But suppose the collection of a tax for the purpose mentioned, the tax-payer not consenting, would be an unconstitutional taking of private property—who should complain of it? There is nothing in the record showing us that any citizen of *Aurora* objects to his property being, or having been, so taken—that every one is not acquiescing, consenting—that they have not all of them stood by and seen the subscription made, bonds issued, and money expended by the company, on the faith of these acts. May they not bind themselves—be estopped—by such acts? See *The State, ex rel.*, &c., v. *Sickler*, at this term. With one member of the Court, these considerations have weight in the decision of the cause.

To this point, we have proceeded rather in meeting arguments against the existence of the power in question, in cities generally, than otherwise.

We now turn to present a short, and to us, a conclusive

May Term, one, in support of the power of the city of *Aurora* to take
1857.      stock and issue bonds.

THE CITY OF      "In *England*, corporations are created, and exist, by pre-
AURORA      scription, by royal charter, and by act of parliament.  With
v.
WEST.      us, they are created by authority of the legislature, and not
otherwise."  2 Kent's Com. 276.

"When a corporation is duly created, many powers,
rights, and capacities, are annexed to it.  Some of them
are deemed to be necessarily and inseparably incident to a
corporation, by tacit operation, without an express provi-
sion; though it is now very generally the practice to spe-
cify, in the act or charter of incorporation, the powers and
capacities with which it is intended to endow the corpora-
tion."  *Id.* 277.

"Public corporations are such as are created by the gov-
ernment for political purposes, as counties, cities, &c.; they
are invested with subordinate legislative powers, to be
exercised for local purposes connected with the public
good, and such powers are subject to the control of the
legislature of the state."  *Id.* 275.

And "under republican governments, where the political
tendencies are centrifugal, tending to diffuse power among
the members, rather than concentrate it in the head, of the ·
body politic, we may expect greater powers of local gov-
ernment entrusted to the municipal corporations scattered
over the state."  *Lafayette* v. *Cox*, 5 Ind. R. 38.

Such was the spirit in which our new constitution was
framed and adopted.  Hence, the restraints upon the legis-
lative power in regard to enacting special and local laws,
and the provisions for extending local administration.

As to corporations, that constitution, art. 11, ss. 13 and
14, ordains that—

"Corporations, other than banking, shall not be created
by special act, but may be formed under general laws.

"Dues from corporations, other than banking, shall be
secured by such individual liability of the corporators, or
other means, as may be prescribed by law."

Such is the great power conferred upon the legislature

of creating corporations. And the fourth specification of the schedule declares that—

May Term, 1857.

THE CITY OF AURORA v. WEST.

"All acts of incorporation for municipal purposes, shall continue in force under this constitution, until such time as the General Assembly shall, in its discretion, modify or repeal the same."

These propositions result thus—

1. The constitution of the state authorizes the legislature to create corporations, and imposes no limit as to the powers to be conferred on them; no clause confining their action to objects entirely disconnected with anything outside the corporate limits.

2. Under this constitution, the law creating a corporation, will be the index to the objects for which it was created, and to the powers with which it is endowed, if the grant does not conflict with some other provision of the constitution than those above named, or exceed the power possessed by the legislature itself.

3. As the charter of *Aurora* was granted prior to the new constitution, and conferred the power to subscribe stock, &c., and was continued and confirmed by that constitution, that city has the power to take stock, &c., by express constitutional grant, so far as it could be thus conferred.

4. That charter specifies the roads in which the city may take stock, viz., those running to the city. And, independently of the fact that the charter itself is confirmed by the constitution, we cannot say, in opposition to the judgment of the legislature of the state and people of the city, that such roads may not be of such local interest to the whole city as to justify the exercise of the taxing power of the corporation, over the persons and property of the citizens of the city, to aid in their construction.

We now proceed to the other points.

We think a road running through a city, is a road running to it. Every road to it, is necessarily a road running from it. And one road running through and beyond it, in each direction, is, for the purpose of accommodation to the citizens, equal to two roads to the city. We think the *Ohio and Mississippi Railroad* fills, to *Aurora,* the requirements

of the charter, in this particular, and as the date of the determination of the company to locate the road through that place is not given, we may presume it was prior to the subscription of stock, though we do not mean to decide that it must necessarily have been so.

This case is entirely different from that of *Lafayette* v. *Cox*, *supra*. There, the charter did not confer the power to take stock, but it was attempted to be inferentially derived. Here, the power is expressly granted, and the question is merely whether the road in which the stock was subscribed is one contemplated by the charter.

We think, also, that a company chartered to build a railroad, is chartered to build a road. We think a railroad is a road as properly as a turnpike road, or a plank road, is a road; and one of these kinds was contemplated by the charter, and not common public highways, as the latter are not constructed by chartered companies, while the former are, and the stock is to be taken by the city in a chartered company.

A railroad would accommodate the people of the city more than a plank or a turnpike road, and the stock would be of more value. We think every consideration favors the subscription to the railroad, if to any.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

STUART, J., dissented.

*W. S. Holman* and *J. D. Haynes*, for the appellants.

*P. L. Spooner* and *A. Brower*, for the appellees.