## HANLY *v.* SIMS, SECRETARY OF STATE, ET AL.

[No. 21,573.   Filed December 16, 1910.   Rehearing denied March 15, 1911.]

1. CONSTITUTIONAL LAW.—*Debts.—Creation of.—Internal Improvements.*—Article 10, §5, of the Constitution, providing that "no law shall authorize any debt to be contracted on behalf of the State, except * * * to meet casual deficits in the revenue; to pay the interest on the State debt; to repel invasion, suppress insurrection, or, if hostilities be threatened, provide for the public defense," was designed to prevent the contraction of debts payable in the future for the construction of canals, railroads and other internal improvements.   p. 349.

2. CONSTITUTIONAL LAW.—*Debts.—Creation of.—Payment of Existing Debts.*—Article 10, §5, of the Constitution, providing, among other things, that "no law shall authorize any debt to be contracted on behalf of the State," does not prohibit the passage of a law providing for the payment of a preëxisting debt.   pp. 350, 357.

3. CONSTITUTIONAL LAW.—*"Debt."—Import of Word.*—The word "debt," as used in article 10, §5, of the Constitution, providing that "no law shall authorize any debt to be contracted on behalf of the State," with certain exceptions, imports any claim or demand, either of legal, or of moral, honorary, or equitable, cognizance.   pp. 351, 359, 360, 362.

4. CONSTITUTIONAL LAW.—*Debts.—Vincennes University.*—The act of 1907 (Acts 1907 p. 497), providing for the issuance of bonds in payment of an honorary claim of Vincennes University, existing since 1846, is valid and constitutional, the allowance of such claim resting wholly in the discretion of the legislature.   pp. 352, 356, 358.

5. CONSTITUTIONAL LAW.—*Suits against State.*—Article 4, §24, of the Constitution, providing that a general law authorizing suits against the State may be passed, but that "no special act authorizing such suit to be brought for making compensation to any person claiming damages against the State shall ever be passed," has a prospective operation only and does not prohibit the passage of a special act providing for the payment of a debt existing at the time of the adoption of the Constitution.   p. 352.

6. CONSTITUTIONAL LAW.—*Confiscation.*—*Taxation.*—*Eminent Do-main.*—Section 21 of the Bill of Rights, providing, among other things, that "no man's property shall be taken by law without just compensation," does not apply to the taxing power of the State, but to the exercise of the power of eminent domain.   p. 353.

7. CONSTITUTIONAL LAW. — *Debts.* — *Legislative Judgment as to Amount of.*—The courts will not undertake to revise, or to set aside, an appropriation made by the legislature for the payment of an unliquidated honorary claim against the State.   pp. 354, 361.

8. CONSTITUTIONAL  LAW. — *Statutes.*—*Validity.*—*Presumptions.*— All reasonable presumptions will be indulged in favor of the valid-ity of a statute, and no presumption will be indulged that the legislature acted either in bad faith, or in violation of the Con-stitution.   p. 357.

9. CONSTITUTIONAL LAW.—*Legislature.*—*Discretion.*—*Judicial Con-trol.*—The courts have no power to interfere with the discretion-ary acts of the legislature.   p. 357.

10. STATUTES.—*Debts.*—*"Liquidation" of.*—The word "liquidation," as used in the title of the act of 1907 (Acts 1907 p. 497), pro-viding for "the liquidation and payment of the claim" of Vin-cennes University, imports the existence of a debt as well as the settlement thereof.   p. 358.

11. STATUTES.—*Preamble.*—*Purpose.*—The preamble of a statute serves to show the purpose of the enactment of such statute.   p. 360.

12. CONSTITUTIONAL  LAW. — *Statutes.* — *Private  Purposes.* — The courts have power to determine whether a special act subserves a private purpose.   p. 362.

From Superior Court of Marion County (77,911); *Vinson Carter*, Judge.

Suit by J. Frank Hanly against Fred A. Sims, as Secretary of State, and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Hanly, McAdams & Artman*, for appellant.

*James Bingham*, Attorney-General, *Addison C. Harris, James W. Emison, Harrison Burns* and *Willoughby & House*, for appellees.

JORDAN, J.—Appellant commenced this suit in the lower court as a taxpayer to enjoin the attestation, delivery and acceptance of certain bonds of the State known as the

"Vincennes University Bonds," authorized by an act of the legislature, passed over the Governor's veto on March 9, 1907 (Acts 1907 p. 497), entitled "An act entitled an act providing for the issuing of bonds and coupons of the State of Indiana for the liquidation and payment of the claim of 'The Board of Trustees of the Vincennes University' against the State, in full and final settlement of said claim and of all other demands." Judgment below was rendered upon a demurrer, on the ground of insufficient facts, to each of the two paragraphs of complaint. The sustaining of the demurrer as to each paragraph is assigned as error.

The first paragraph of the complaint sought an injunction against the formal attestation, delivery to and acceptance by the board of trustees of the Vincennes University of bonds of the State payable to bearer in the aggregate amount of $120,548, which bonds were to be issued under and by virtue of the aforesaid act. The contention of appellant is that said act is unconstitutional and void for the following reasons: (1) It is in violation of article 10, §5, of the Constitution of the State of Indiana, which provides that "no law shall authorize any debt to be contracted on behalf of the State, except in the following cases: To meet casual deficits in the revenue; to pay the interest on the state debt; to repel invasion, suppress insurrection, or, if hostilities be threatened, provide for the public defense." (2) It is in violation of article 4, §24, of the Constitution of the State of Indiana, which provides that "no special act * * * making compensation to any person claiming damages against the State, shall ever be passed." (3) It is in violation of section twenty-one of our Bill of Rights, which provides that "no man's property shall be taken by law without just compensation." (4) It requires that the public funds be used for private purposes, and makes a gift of the public funds for private uses.

The second paragraph of complaint sets forth the same general facts as the first, and avers that at the time of the

passage of said act the State was not indebted to the board
of trustees of the Vincennes University in any sum on account
of the matters embraced in the act and its preamble.   Certain
historical data, giving rise to this controversy and in support
of the denial of liability, are set out in detail, the substance
of which is as follows:   That in 1804 the Congress of the
United States granted to the Territory of Indiana, for the
use of a seminary of learning, a township of land to be located
in the Vincennes land district, and to contain 23,040 acres;
that on October 10, 1806, the Secretary of the Treasury
located and set apart, as constituting said grant, township
two south, range 11 west, in the Territory of Indiana; that
by an act of the territorial legislature approved November
29, 1806 (Acts 1806 p. 6), and supplemented by an act ap-
proved September 17, 1807 (Acts 1807 p. 436), the board of
trustees of the Vincennes University was duly incorporated,
and under authority given in its charter sold 4,000 acres of
said land prior to January 22, 1820; that on January 22,
1822, 19,040 acres of said grant remained, which the State,
through its General Assembly, erroneously assumed to own,
and directed that it be sold and the proceeds paid into
the state treasury; that the State did sell to numerous
persons, prior to May 4, 1846, 16,840 acres of said real estate;
that in 1844 the board of trustees of said university com-
menced suits in ejectment against various purchasers, who
on that account memorialized the General Assembly of 1846,
and an act was thereupon passed, and approved January 17,
1846 (Local Laws 1846 p. 233), entitled "an act to authorize
the trustees of the Vincennes University to bring suit against
the State of Indiana and for other purposes."   That in
pursuance of this act on May 4, 1846, suit was commenced in
the Marion Circuit Court by said board of trustees against
the State, in which a final judgment was rendered on May
21, 1849, in favor of the complainants for $48,778.02, of which
$13,249.19 was paid by turning over to the board unpaid
obligations for purchase money then in the hands of the

State, and the remaining $35,528.83, with interest, was paid by the issuance of bonds, which had been fully redeemed and paid prior to March 9, 1907; that between May 4, 1846, and March 11, 1895, the State sold and conveyed, at given dates, 2,141.75 acres of said lands for a total consideration of $1,547.30; that in the general appropriation bill of March 11, 1895, the General Assembly made an appropriation in favor of the board of trustees of said university in full settlement of all claims against the State in the sum of $15,000, which amount was subsequently paid and accepted pursuant to said act. It is finally averred that at the passage of the act of 1907, *supra*, the State was not indebted to the board of trustees of the Vincennes University in any amount, and the issuance of "said bonds as in said act directed will be a gift and gratuity to said trustees, which the General Assembly has no authority to grant or bestow, and said act is therefore void and of no effect."

The preamble to the act in controversy, after reciting certain historical matters and the fact that a commission consisting of the Secretary, Auditor and Treasurer of State was created in 1903 to investigate and report as to the merits of said claim, and the finding of this commission concludes as follows: "Whereas, the State of Indiana has not rendered to said board of trustees adequate compensation for said lands and the losses thereby sustained, and there is equitably and justly due to said board of trustees by reason thereof said sum so found due by said state officers, amounting to $120,548, which sum, in bonds of the State, with interest coupons, said board of trustees will accept in full settlement and payment of said claim and all demands against the State; therefore, be it enacted," etc.

Appellant first insists that the statute before us is invalid, because it purports to authorize a debt to be contracted on behalf of the State for an unauthorized purpose.

1. Prior to 1851 the State had engaged in financing the construction of canals, railroads and other internal

improvements, which eventually resulted in much extravagance and many vexatious contentions. The section of the present Constitution, restricting the contracting of debts on behalf of the State, and others of like nature, were designed to prevent the State from incurring debts on such account to be paid in the future, and to withdraw and withhold the State's credit from the promotion and construction of public works remotely related to the primary functions of government. The manifest purpose of the General Assembly, in enacting the statute assailed by appellant, was 2. not to contract a debt, but to pay and discharge a preëxistent, outstanding obligation. The consideration for the act and contemplated payment was not to be received in the present or in the future, but had been received long before, even prior to the adoption of the constitutional provision upon which appellant relies. This clause of the Constitution does not purport to forbid the payment of an existing debt out of the current revenues. *City of Aurora* v. *West* (1857), 9 Ind. 74, 77. If the General Assembly had elected so to do, it might have paid the acknowledged liability to the university, and thereby caused a casual deficit in the revenues, and then would have authority under this provision of the Constitution to go into the money market and contract a debt, by borrowing money to replenish the treasury. If such a thing might be legally accomplished by indirection, it certainly may be done directly. The bonds authorized by the statute in question were designed merely to transform the State's existing liability or indebtedness from an unliquidated claim into a definite amount payable at a particular time. The essence of the debt or liability, and hence the debt itself, was long before existent, and the statute in controversy merely authorized the execution of such evidences of the indebtedness as in the absence of money would be acceptable as payment. This court, in construing article 13 of the state Constitution, which prohibits municipal corporations from creating a debt

in excess of two per cent of their taxable property, said: "The issuing of new bonds to provide, at their par value, for the payment of an old debt, or the substitution of new evidences of a preëxisting debt, is not, in any legal or proper sense, the creation of a new indebtedness." *Powell* v. *City of Madison* (1886), 107 Ind. 106, 114. See, also, *City of Logansport* v. *Dykeman* (1888), 116 Ind. 15, 21; *Aetna Life Ins. Co.* v. *Lyon County* (1890), 34 Fed. 329; *Aetna Life Ins. Co.* v. *Lyon County* (1897), 82 Fed. 929. It is certainly clear that the issuance of bonds in settlement and payment of an obligation acknowledged to be justly owing for past considerations was not the contracting of a debt within the meaning of that term as employed in the Constitution.

Appellant denies that the claim of the university was such a "debt" as might be recognized, and would limit the application of the principle just stated to the satisfaction of a debt or obligation which is contractual, legal and enforceable. This interpretation of the term "debt" is too narrow, and is untenable. The Constitution of the United States authorizes congress to lay and collect taxes to pay the "debts" of the United States. In the case of the *United States* v. *Realty Co.* (1896), 163 U. S. 427, 440, 16 Sup. Ct. 1120, 41 L. Ed. 215, in construing this provision the court said: "It cannot be questioned that the debts are not limited to those which are evidenced by some written obligation or to those which are otherwise of a strictly legal character. The term 'debts' includes those debts or claims which rest upon a merely equitable or honorary obligation, and which would not be recoverable in a court of law if existing against an individual. The Nation, speaking broadly, owes a 'debt' to an individual when his claim grows out of general principles of right and justice; when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could obtain no recognition in a court of law. The power

of Congress extends at least as far as the recognition and payment of claims against the government which are thus founded. To no other branch of the government than congress could any application be successfully made on the part of the owners of such claims or debts for the payment thereof. Their recognition depends solely upon Congress, and whether it will recognize claims thus founded must be left to the discretion of that body." See, also, *Mount* v. *State, ex rel.* (1883), 90 Ind. 29, 30, 46 Am. Rep. 192; *Julian* v. *State* (1890), 122 Ind. 68, 77; *Guthrie Nat. Bank* v. *Guthrie* (1898), 173 U. S. 528, 19 Sup. Ct. 513, 43 L. Ed. 796.

We conclude, therefore, that the General Assembly in the exercise of its powers may transform a debt such as appears to have existed in favor of the Vincennes University into a liquidated or admitted form, evidenced by negotiable paper, without transgressing the constitutional inhibition against contracting debts in the name of the State.

The next constitutional provision invoked against the statute is article 4, §24, which reads as follows: "Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

This provision, if applicable in any sense, has reference only to liabilities originating after the adoption of the Constitution. The legislature of 1855, soon after the adoption of the Constitution, passed an act similar to that now before us, authorizing the issuance of bonds to pay the judgment, with interest and costs, rendered against the State, on May 21, 1849, on account of this controversy. The act of January 17, 1846, authorizing the State to be sued in that behalf, does not provide for the recovery of damages for the use of said lands, or for any interest accruing prior to the institu-

tion of such suit, which was begun May 4, 1846. It is suggested that interest to the amount of $23,000 had accrued prior to that date. This sum compounded or at simple interest would approximate the sum admitted to be equitably due and owing in 1907. This court is not concerned with the accuracy of the amount, but judicially knows that the substantial basis, if not the entire amount, of the university's claim antedates the present Constitution, and this clause of the Constitution cannot affect the validity of the act authorizing its payment.

It is alleged that the statute under consideration violates section twenty-one of the Bill of Rights contained in the state Constitution, which provides that "no man's property shall be taken by law without just compensation." It is not proposed to appropriate any specific part of appellant's property, but only to subject it, in connection with other taxable property, to such burden of taxation as may be necessary to discharge the obligations of the State. This provision of the Constitution was not intended as a restriction upon the State's taxing power, but relates only to the exercise of the power of eminent domain. This court at an early day made the distinction clear and unmistakable by the use of the following words: "Property may be taken, through the taxing power, for public use, without any other compensation than the common benefit which the appropriation and expenditure of the proceeds of the tax produce. It is only the taking of specific pieces of the property of an individual, by virtue of the right of eminent domain, that is prohibited by the Constitution, without special compensation." *City of Aurora* v. *West* (1857), 9 Ind. 74, 83. See, also, *People, ex rel.,* v. *Mayor, etc.* (1851), 4 N. Y. 419, 55 Am. Dec. 266; *State* v. *Richcreek* (1906), 167 Ind. 217, 5 L. R. A. (N. S.) 874, 119 Am. St. 491; *Stone* v. *Fritts* (1907), 169 Ind. 361, 15 L. R. A. (N. S.) 1147.

It is finally argued that the issuance of the bonds described is a mere gift or gratuity, which the General Assembly is

not authorized to make. We are not called upon to determine under what circumstances the legislature may make charitable donations or voluntary gifts, since under the facts disclosed this contention is not entitled to serious consideration. In the case in hand, the General Assembly manifestly did not assume to make a gift, but upon prior investigation, and preceding the passage of the act now challenged, declared that "there is equitably and justly due" to the board of trustees of the Vincennes University, the sum of $120,548. It was within the province of the legislature to determine this question for itself, and when so determined, that conclusion is binding on the other coördinate departments of the state government. In the case of *Hovey* v. *Foster* (1889), 118 Ind. 502, 508, this court, by Mitchell, J., said: "The power of obtaining information for the purpose of framing laws to meet existing or apprehended contingencies, is within the legitimate province of a legislative body, and to that end it may summon witnesses and hear testimony in proper cases. *People, ex rel.,* v. *Keeler* [1885], 99 N. Y. 463, 2 N. E. 615, 52 Am. Rep. 49; *Kilbourn* v. *Thompson* [1880], 103 U. S. 168, 26 L. Ed. 377. Courts cannot make an issue of fact, or review the facts as such, upon which the legislature must be presumed to have passed, in order to determine the validity of an act of the legislature."

In the case of *Mount* v. *State, ex rel.* (1883), 90 Ind. 29, 30, 46 Am. Rep. 192, this court said: "It would be a violation of the principles underlying our governmental structure for courts to sit in judgment on the action of the legislature allowing relief to individual claimants against the State or its funds, and review their decision solely upon the ground that there was no legal foundation for the claims. A conflict would result which would produce endless confusion and serious disaster."

In the case of *Julian* v. *State* (1890), 122 Ind. 68, 77, the court pertinently said: "By the legislature's passing an act

adjusting the claim it took the whole jurisdiction of the matter, and withdrew from the courts any jurisdiction to adjudicate upon the right to recover, or the amount to be recovered. The law authorizing the State to be sued only authorizes suits to be brought in cases where there is a liability on the part of the State to the claimant, which has not been adjusted by the legislature; but does not authorize suits where there only exists a moral obligation to pay, as may exist in case of the appellants. In such cases payment is discretionary with the legislature, and its action is final." See, also, *United States* v. *Price* (1885), 116 U. S. 43, 6 Sup. Ct. 235, 29 L. Ed. 541.

The principle embodied in the quotations just given has long been settled on elemental reasons, and from it we have no inclination to depart. The Governor, in the rightful exercise of his authority, elected to withhold his approval from this act, and interposed a veto message embodying all the objections urged by appellant in this appeal. The General Assembly passed the act over the Governor's veto, and thereupon its conclusions of fact became as binding upon the executive as upon the judicial department of government. We are in effect now asked to weigh the findings of fact made by the legislature against the opposing contentions of the disregarded veto message. This we decline to do, and cannot do with propriety or a decent regard for the rights of a coördinate branch of the state government. It is not becoming a sovereign state to weigh its obligations to an injured and helpless subject in an "apothecary's scales." While the State is not required to be generous, nevertheless, it at least ought to be just in its dealings, and it may well set an example of complete justice in making voluntary reparation, long deferred, in a matter involving its honor and fair dealing. No statute of limitations, or other barrier, should restrain the State from yielding a complete account of the bounty granted by the federal government in trust for a creature of its laws, for a noble work. The General

Assembly—virtually the State's great directory—acting for it, has made such an accounting, and there is no longer any basis for the contention that the sum awarded is a mere gift or gratuity.

In conclusion, we may say that after a careful and full consideration of the questions presented by appellant, we are unable to perceive that the act in question violates any constitutional or fundamental law. As this court said in the case of State, ex rel., v. Menaugh (1898), 151 Ind. 260, 43 L. R. A. 408: "Under article 4, §1, of the state Constitution, all legislative authority is lodged in the General Assembly, and as regards this authority, that body is considered supreme and sovereign, subject to no restrictions except those which the state Constitution expressly or impliedly imposes, and the restraints of the federal Constitution and the laws and treaties passed and made pursuant thereto. Aside from these inhibitions or restrictions, the legislature may be said to be unfettered in the exercise of the power with which it has been invested."

The demurrer to each paragraph of complaint was correctly sustained. Therefore, the judgment is affirmed.

Monks, J., dissents.

## ON PETITION FOR REHEARING.

JORDAN, J.—Appellant has petitioned for a rehearing, and in support thereof has filed a voluminous brief, which is virtually a reargument of the points which he advanced, and which were considered, at the former hearing. He appears to assume that the legislature, in passing the act in question liquidating the claim of the Vincennes University and authorizing the issuing of bonds in settlement thereof, attempted to evade and disregard the Constitution of the State, and upon this theory he—in part at least—assails the validity of that act. In fact he brushes aside the finding of the legislature of 1907 (Acts 1907 p. 497), by which that body discloses its intent and purpose in enacting the statute,

by asserting in his brief that "the finding of the legislature is nothing else than a mere pretext to evade the Constitution." He assails the integrity of the legislative department, imputes bad faith to its action, and virtually asks this court to adopt his view in this respect, and impute to a coördinate branch of the state government bad faith, and a pretext upon its part to evade the Constitution, which each member composing that body had taken a solemn oath to support.

We must indulge all reasonable presumptions in favor of the validity of the act challenged by appellant, and will not presume that the legislative department acted in bad faith, or in any manner endeavored to evade the Constitution in enacting said act. We must presume that the action of the legislature was legitimate, until the contrary is made to appear. If the exercise of the discretion of that body is within the limit of its constitutional authority, we can no more interfere with its discretion than it can encroach on the province of this court, for it is well settled that its discretion is not subject to the control of the judiciary nor within judicial surveillance. *Jamieson* v. *Indiana, etc., Oil Co.* (1891), 128 Ind. 555.

Appellant continues to press his former argument—that we must remember that the act in question does not fall within any of the exceptions of article 10, §5, of the Constitution. We certainly recognize this fact, and, under the circumstances, our original holding was not and could not have been in any manner based on any of the exceptions of that section. In our former opinion we held that the restrictions in article 10, §5, *supra,* were designed to prohibit the State from contracting debts in the future on account of the promotion and construction of public works or improvements. This was the view in respect to the restriction in question entertained by this court in the case of *Hovey* v. *Foster* (1889), 118 Ind. 502, when it had under consideration the same section of the Constitution.

In regard thereto the court in that case said: "It is apparent that the purpose with which this provision was framed and adopted was to impose restrictions upon the power of the legislature to authorize debts to be contracted on behalf of the State to an unlimited amount. * * * The evils of an enormous public debt, the legacy of the system of public improvements in which the State had theretofore embarked, were fresh in the minds of the people when the present Constitution was adopted. This was the mischief that was not to be repeated."

By the act under consideration no original debt was contracted by the State. The bonds to be issued were merely in payment of a previous obligation against the State in favor of Vincennes University, which arose long before our present Constitution came into existence; an obligation which the legislature, both before and after the adoption of this document, recognized and acknowledged. That the legislature under the act in controversy neither contracted nor intended to contract any new obligation by issuing the bonds, is made plain by the title to the act. The title discloses that the act proposed is for the issuing of bonds and coupons of the State "for the liquidation and payment of the claim of 'The Board of Trustees for the Vincennes University' against the State, in full and final settlement of said claim and all other demands." Certainly it would be absurd to assert that the legislature proposed to liquidate a debt which at the time did not exist. The term "liquidate" is defined to be the act of settling and adjusting debts, or ascertaining the amounts or balance due. 5 Words and Phrases 4180.

The debts forbidden to be contracted on behalf of the State, under the provisions of article 10, §5, of the Constitution, were debts to be contracted in the future, and not debts, claims or obligations which existed against the State at the time of the adoption of the Constitution. As there is nothing in said §5 to manifest any in-

tention that it should have a retrospective effect, it must therefore be construed and held to operate prospectively only. Cooley, Const. Lim. (7th ed.) 97.

That the provisions of our present Constitution must be construed as operating prospectively, is affirmed in *State* v. *Barbee* (1851), 3 Ind. 258, and *Hand* v. *Taylor* (1853), 4 Ind. 409.

But appellant, upon the viewpoint assumed by him, discredits the finding of the legislature, and denies that there was any semblance of a preëxisting claim which that body, in its discretion, had the right or power to liquidate. To sustain his contention he relies upon the decision in the case of *State, ex rel.,* v. *Hawes* (1887), 112 Ind. 323. The question there presented was whether a township certificate executed by its trustee without any consideration therefor, and without authority of law, constituted an enforceable obligation against the township. It was held that such certificate was void. The court said: " It is essential to the idea of a debt, that an obligation must have arisen out of a contract, express or implied, in favor of some one occupying the relation of creditor, which entitles the latter to receive a sum of money, which obligation, by possibility, might, or ought to be, enforced against another."

In the later case of *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 7 L. R. A. 681, this court, in considering the question as to whether certain street-improvement bonds created an indebtedness against the city of Indianapolis, speaking by Mitchell, J., said: " An indebtedness cannot arise unless there is either a legal, equitable or moral obligation to pay a sum of money to another, who occupies the relation of creditor, and who has a legal or moral right to call upon or constrain the debtor to pay. * * * It is not always essential, in order to the existence of an indebtedness, that there should be an absolute legal right to coerce payment, as in that sense the State could never become

indebted. * * * It is, however, essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitles the holder thereof unconditionally to receive from the promisor a sum of money which the latter is under a legal or moral duty to pay, without regard to any future contingency." This holding in this latter case completely refutes appellant's argument that there was no preëxistent debt or claim which the legislature had the right to liquidate.

As the authorities affirm, the preamble in a statute is a prefatory statement or explanation. It purports to state the reason or occasion for making the law to which it is prefixed. It usually discloses the intention of the legislature in enacting the statute. 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §341. See, also, *Smith* v. *State* (1867), 28 Ind. 321.

The preamble of the act in question may be said to contain the finding of facts by the legislature which led up to the passage of the act in controversy. It recites, among other things, that in 1804 the Congress of the United States set apart 23,040 acres of land in the Vincennes land district for a seminary of learning in that district; that in the years of 1806 and 1807 the legislature of the Indiana Territory authorized the board of trustees of the Vincennes University to take and hold this land for the use and maintenance of that institution; that in 1820, and subsequently thereto, the State of Indiana, through its legislature, assumed control and possession of 19,040 acres of this land, and appropriated it to its own use, sold it, and used the proceeds thereof. All of which, as further recited, was held by the Supreme Court of the United States to have been unwarranted and illegal. The same facts as found by the legislature are set up by appellant in his complaint.

Under the facts, and the law applicable thereto, it may be said that an implied legal liability was created against

the State in favor of the board of trustees of the university. *State* v. *Mutual Life Ins. Co.*, *ante*, 59. Of course such claim or liability was one that could not at the time have been enforced against the State by a suit in court, as the State could not be sued without its consent, secured through its legislative department.

It further appears, however, from the facts alleged by appellant in his complaint, that the legislature, on January 17, 1846, passed an act authorizing the trustees of said university to institute a suit against the State. This suit was instituted by the board of trustees in the Marion Circuit Court, and in 1849 judgment therein was rendered in its favor against the State on the claim. By this judgment the liability of the State—impliedly at least—was affirmed. Another payment in 1895 appears to have been authorized by the State to be made to said board of trustees on this claim.

By authorizing a suit to be instituted against it, and by making the payments shown, the State, prior to 1907, manifestly recognized that an obligation existed against it

7. to pay and reimburse the Vincennes University for the proceeds of the lands which it had sold and used. To what extent the State should recognize the claim of the university, and what would be adequate compensation for the lands out of which the claim arose, was a matter wholly within the discretion of the legislature.

Appellant insists that the court was wrong in holding that it was not its province to review facts upon which the legislature is presumed to have acted in enacting a statute. Or, in other words, he contends that where such facts are denied the court has a right to subject them to review. Consequently he argues that this court should determine whether it is true, as found by the legislature, that the university had not been adequately compensated for the loss which it had sustained through the acts of the State, and whether there was equitably and justly due to the board the sum of

$120,548, as found by the legislature and also by the commission composed of state officials.

It is true, as affirmed by some authorities, that where the question arises whether the act in controversy is to subserve merely a private purpose and not a public one, and the facts upon which the legislature has acted are denied, the court may inquire in respect to the facts, whether, in truth, they did exist, and if thereby it clearly appears that the purpose or object of the act was a private one, and beyond the legitimate pale of legislation, the court in determining the validity of the statute will not regard itself as precluded by the facts upon which the legislature may have acted. Whatever may be the rule in other jurisdictions, it is, however, under the decisions in the cases of *Mount* v. *State, ex rel.* (1883), 90 Ind. 29, 46 Am. Rep. 192, *Hovey* v. *Foster, supra,* and *Jamieson* v. *Indiana, etc., Oil Co., supra,* settled in this State that courts in cases like this one will not raise an issue of fact, or sit in judgment upon the acts of the legislature, and review its decisions wholly upon the ground that there was no legal foundation for the claim.

Appellant asserts that it is evident that the legislature did not recognize that the thing for which it was providing payment by the act in question was a debt or an obligation, because in the title of the statute the term "claim" is employed instead of "debt" or "liability." The term employed by the legislature in the title is immaterial in this respect. Whether the legislature employed the term "claim," "debt," "obligation" or "liability" is not essential in this action, for, as said, under the facts, and the law applicable thereto, an implied obligation or liability arose against the State when it appropriated the proceeds of the lands belonging to Vincennes University.

As authorities affirm, the term "debt" is of large import and includes all that is due to a person under any form of obligation or promise. In its enlarged sense, a debt is any kind of a just demand. See, in support of this

proposition, the following cases: *New Haven, etc., Co. v. Fowler* (1859), 28 Conn. 103; *Gray* v. *Bennett* (1842), 44 Mass. 522; *Rodman* v. *Munson* (1852), 13 Barb. (N. Y.) 188.

It is evident that what the legislature in enacting the act in question recognized, was the fact, as found, that there was "equitably and justly due" to the trustees of the university the amount allowed. The State, through its legislature, determined what it would allow as a full settlement of the residue of the claim held against it by the board of trustees. In the appeal of *Dennis* v. *Maynard* (1854), 15 Ill. 477, which case was approved by this court in the case of *Lucas* v. *Board, etc.* (1873), 44 Ind. 524, the court said: "The State does not allow itself to be sued, but it may hear, investigate and determine its own indebtedness, and assume the debts due to, or from others."

It appears in this case that the State, through its legislature, investigated the indebtedness or claim in question, liquidated and allowed it to an amount that it considered justly due to the university, and authorized the payment thereof. As its action in the matter does not fall within any constitutional prohibition or restriction, its decision and action must be regarded as final, and not open to judicial review.

Petition for rehearing denied.

## Concurring Opinion.

Myers, C. J.—I was not able to participate in the original decision in this cause to the extent of examining the authorities, but on the petition for a rehearing I have examined the questions presented.

I concur in the conclusion reached in the case by the majority of the court, but I base my conclusion upon different grounds. I am unable to assent to the proposition that a debt existed in the ordinary acceptation, but it seems to me that a moral obligation, based upon a prior legal demand, is shown, by the preamble and body of the act, to have ex-

isted in favor of Vincennes University, prior to the adoption of the present Constitution. At least, a department of the government, presumably as intelligent and imbued with as high a sense of duty and justice as this department, has so declared.

It is hardly conceivable that in the adoption of the Constitution it was intended that, by virtue of its sovereignty, the State should by its fiat absolve itself from its existing moral obligations, and its duty of honesty toward all its citizens, or that mere sovereignty should absolve a state from the principles of common honesty. Through the various acts that have been passed, the university has been forced to accept what the State has offered, owing to its inability to enforce a demand against a sovereignty further than the latter consents. In other words, in the various acts the State has exercised its sovereignty in giving or withholding, as it saw fit, so that the question of satisfaction by the permissive action and former payments could go no further, as matters of law, than to operate as an acknowledgment of the moral obligation. If then a moral obligation existed, as the legislature has found, it existed as much as a debt, at one time enforceable, but which, by operation of some statute of limitations, or by virtue of bankruptcy, had become unenforceable. Its payment, or the promise to pay, is not the payment of, or the promise to pay, a new debt, but a former debt. The prior legal obligation furnishes the consideration for the promise, for the promise itself is not sufficient. It is provided by article 4, §24, of the Constitution that " provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed." The rule is, that constitutions shall operate prospectively. This provision evidently means that no special act shall ever be passed,

authorizing suit against the State, or making compensation to any person claiming damages for liabilities originating after the adoption of the Constitution, but that any law that may be passed as applying to such cases must be a general law.    Prior to the enabling act of 1889 (Acts 1889 p. 265, §1419 Burns 1901), no suit against the State could be maintained, and it is held under that act that it is restricted to the classes of claims defined by the act, so that the claim of the university could not fall within that statute, and there was no other authority except the enabling act of 1846, under which any action could have been maintained, and that act was restrictive.    So that construing article 4, §24, with article 10, §5, providing that "no law shall authorize any debt to be contracted on behalf of the State," evidently means any debt created or arising after the adoption of the Constitution, in the sense of debts as generally understood, and not to the discharge of moral obligations existing prior to the adoption of the Constitution, as to which the State is as free as an individual would be.    The legislature having found that such moral obligation did exist, puts the matter beyond the inquiry of the courts.    The moral obligation existed, or it did not.    If it did, it existed irrespective of whether it was enforceable or not, and the present action is no more the creation or contracting of a debt than a promissory note given for an uncollectible demand is the creation or contracting of a debt.    It is putting it in an enforceable form, precisely as in case of a promissory note—an acknowledgment of the obligation.    Suppose a defense were interposed against the bonds, that they were without consideration; a reply of the moral obligation arising from the previous legal demand would be sufficient, and would furnish the sole consideration.    They would not, and could not, be based on any other consideration which would not be a *nudum pactum*.    If the State had the right, or the power, or was under obligation originally, express or implied, to reimburse the university, it was because there was an

obligation, legal or moral. If it has never been discharged it still exists, and if so the promise to pay it is not contracting a debt, though it may be rendering the obligation enforceable. It has been held that when the legislature assumes jurisdiction to adjust a claim made against the State and does adjust it, no suit will lie under §1419, *supra.  Julian v. State* (1894), 140 Ind. 581.

And if its action is final in that respect, it is difficult to perceive how the courts may review its action in the particular at bar, unless we could say that there is no foundation for its action—that is, that there was no moral obligation. To do this would require that we should set up our opinion on that question against that of the legislature, in a matter in which its jurisdiction is exclusive, except as limited by the Constitution. And when we attempt to apply the limitations under which the courts are authorized to interfere, we are confronted with the proposition that the moral obligation is one thing, and its enforcement or its enforceability quite another thing. The obligation may not be enforceable, and still exist. These limitations apply to contracting debts, and not to recognition of obligations, though moral only, that previously existed. Could it reasonably be claimed that the recognition and putting in form of a bond, after the Constitution of 1851 went into effect, of a *bona fide* state debt existing before that time was the contracting of a debt? The learned appellant frankly concedes that " when a debt within the use and legal contemplation of the term exists, its form may be changed into a promissory note, and from a promissory note into a bond," etc.

Must it be an enforceable obligation in order to be a debt, or may it be a moral obligation? In its last analysis this is the key to the decision that should be rendered in this case. If a moral obligation, based upon an antecedent legal obligation is sufficient, as I think it is, then its acknowl-

edgment is no more the contracting of an indebtedness than the refunding of an existing, enforceable obligation that is held not to be in violation of article 13 of the state Constitution, limiting political and municipal corporate indebtedness to two per cent of the taxable property within such corporation, but is the acknowledgment of previous indebtedness. *Myers* v. *City of Jeffersonville* (1896), 145 Ind. 431; *Powell* v. *City of Madison* (1886), 107 Ind. 106; *City of Logansport* v. *Dykeman* (1888), 116 Ind. 15.

The moral obligation standing alone might not be sufficient, but when it arises from a precedent legal obligation, which is acknowledged by the act under consideration, and is not so palpably without foundation that the courts can so declare, it seems to me that it is a matter of purely legislative discretion, and does not fall within the inhibition of the Constitution as the contracting of a debt, but is the change from a moral obligation, based upon an antecedent legal obligation, to an acknowledgment of both as a preëxistent debt.